[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Plaintiff, Robert Fromer, appeals the decision of the defendant Town of Waterford Planning and Zoning Commission ("PZC"), granting the application of defendant Reynolds Metals Development Corporation ("Reynolds" or "the applicant") to subdivide approximately 188 acres of land into 26 non-residential building lots.
The principal issue on this appeal is whether the record supports a finding that the subdivision proposed by Reynolds and approved by the PZC will not have, or is not reasonably likely to have, the effect of unreasonably polluting, impairing or destroying the public trust in natural resources within the PZC's jurisdiction to regulate when it passes on subdivision applications.
I. JURISDICTION
In order to take advantage of a statutory right to appeal from a decision of an administrative agency, there must be strict compliance with the statutory provisions which created that right. Simko v. Zoning Board of Appeals,206 Conn. 374, 377 (1988). These provisions are mandatory and jurisdictional; failure to comply subjects the appeal to dismissal. Id.
II. AGGRIEVEMENT/STANDING
Plaintiff alleges that he "is statutorily and legislatively aggrieved for the limited purpose of raising environmental issues pursuant to Connecticut General Statutes Section 22a-19." (Amended Complaint, par. 4.) Section22a-19 (a) provides:
Administrative proceedings. (a) In CT Page 5759 any administrative, licensing or other proceeding, and in any judicial review thereof made available by law, the attorney general, any political subdivision of the state, any instrumentality or agency of the state or of a political subdivision thereof, any person, partnership, corporation, association, organization or other legal entity may intervene as a party on the filing of a verified pleading asserting that the proceeding or action for judicial review involves conduct which has, or which is reasonably likely to have, the effect of unreasonably polluting, impairing or destroying the public trust in the air, water or other natural resources of the state.
Connecticut General Statutes Section 22a-19 (a) (rev'd to 1989).
Plaintiff filed a verified pleading of intervention with the PZC on the first day of the public hearing alleging ". . . conduct which has, or which is reasonably likely to have, the effect of unreasonably polluting, impairing or destroying the public trust in the air, water or other natural resources of the state. . . ." (ROR #23, par. 7; #3, pp. 4-5, 7-8.) Section22a-19 allows intervention in proceedings before planning and zoning authorities. Red Hill Coalition, Inc. v. Town Plan 
Zoning Commission, 212 Conn. 727, 733, 733-34 n. 7 (1989). One who intervenes in an administrative proceeding pursuant to section 22a-19 has standing "to appeal for the limited purpose of raising environmental issues." Id. at 734 (quoting Mystic Marinelife Aquarium, Inc. v. Gill, 175 Conn. 483, 490 (1978)); see also Red Hill Coalition, Inc. v. Conservation Commission,212 Conn. 710, 715 (1989). The verified pleading of intervention "set(s) the parameters of the issues" which may be raised by the intervenor on appeal. Mystic Marinelife,175 Conn. at 490.
In addition, standing under section 22a-19 is limited further by the jurisdiction of the administrative authority whose decision is being challenged:
 Section 22a-19, which authorizes any person to intervene in any administrative proceeding and to raise therein environmental issues must be read in connection with the legislation which CT Page 5760 defines the authority of the particular administrative agency. Section 22a-19 is not intended to expand the jurisdictional authority of an administrative body whenever an intervenor raises environmental issues. Thus, an inland wetland agency is limited to considering only environmental matters which impact on inland wetlands. Other environmental impacts must be raised before other appropriate administrative bodies, if any
. . . .
Connecticut Fund for the Environment v. Stamford, 192 Conn. 247,250-51 (1984) (emphasis added).
Therefore, it is evident that plaintiff has standing for the limited purpose of raising environmental issues which are within the PZC's jurisdiction to consider when acting on an application for subdivision approval. Claims of procedural irregularities or of environmental effects beyond the power of the PZC to consider when acting on an application for a subdivision approval are not properly before this Court. Plaintiff cited the following defendants: Reynolds; the Town of Waterford; the Clerk of the Town of Waterford; and the PZC. The Town and Reynolds were served on April 26, 1990, and the PZC was served on April 28, 1990. As all of the procedural requirements have been met, including publication of notice, service on the appropriate defendants and timeliness, this Court has jurisdiction to hear and decide this appeal. See Connecticut Public Acts No. 90-286, sections 1, 3, 9 (1990).
III. FACTS
Reynolds applied to the PZC for approval to subdivide approximately 188 acres of land consisting of the former Waterford-New London Airport into 26 building lots, and for a waiver of section 5.6.6 of the Waterford Subdivision Regulations, which concerns the length of cul-de-sacs. (ROR #2, "Project Summary," "Evidence of Submittals"; #3, pp. 4,8-10.) The subject property is located at 124 Parkway South, Waterford, Connecticut. (ROR #3, p. 4.) The property is located in an IP-1 (general industrial park) district, which has a minimum lot size of 80,000 square feet. (ROR #3, p. 4; #132, Zoning Regulations, section 2.1.)
The PZC held a public hearing on January 22, 1990, which was continued to February 13, 1990 and to March 5, 1990. CT Page 5761 (ROR #3, #4; #5; #6.) Notice of the hearing was published in The Day on January 10 and January 17, 1990, in accordance with section 8-26 of the General Statutes. See Connecticut General Statutes Section 8-26 (rev'd to 1989, as amended by Connecticut Public Acts No. 89-356, section 14 (1989)). (ROR #6.) On April 9, 1990, the PZC approved Reynold's subdivision application and request for waiver and attached modifications and conditions to that approval. (ROR #133, p. 3 and Attachment B.)
Reynolds also sought and received a permit to conduct regulated activities from the Waterford Conservation Commission. Plaintiff Fromer has appealed that decision as well. See Fromer v. Reynolds Metals Development Corporation, et al, D.N. 512967. Scott Gardiner, an abutting landowner, also appealed from the Conservation Commission's decision (D.N. 513025) and from the PZC's decision (D.N. 514319). A motion to consolidate both appeals from the PZC's decision (D.N. 514151 and D.N. 514319 was granted by the Court, Hendel, J. on June 11, 1990. (See Court File, D.N. 514151, #106.) Also, a motion to consolidate all four appeals for trial was granted by the Court, Axelrod, J., on July 9, 1990. (See Court File, D.N. 513025, #110.) This memorandum addresses only the appeal of plaintiff Fromer from the decision of the PZC (D.N. 514151). The four appeals were heard and argued on January 29, 1991.[1]
Plaintiff filed a brief on August 27, 1990. Reynolds filed a brief on September 28, 1990. The PZC's brief adopted the brief of Reynolds. At the hearing on appeal, plaintiff submitted a written document entitled "Plaintiff's Testimony and Argument at Trial," dated January 29, 1991. This document was also submitted in plaintiff's appeal from the Conservation Commission's decision and does not address the action of the PZC but rather that of the Conservation Commission, and essentially mirrored plaintiff's oral presentation.
IV. SCOPE OF REVIEW
"Appellate review of an agency's decision is of limited scope. The reviewing court does not make a broad, de novo review of the record." Kaeser v. Conservation Commission,20 Conn. App. 309, 311 (1989) (citing Huck v. Inland Wetlands Watercourses Agency, 203 Conn. 525, 541 (1987)). "It does not redetermine factual issues or weigh the credibility of witnesses, as those are matters within the exclusive province of the agency." Id. (citation omitted). "The court is limited to a review of the evidence and reasoning the agency has placed on the record. Agency decisions must be sustained if the record reveals substantial evidence in support of any CT Page 5762 reason given." Id. (citation omitted). "This so-called substantial evidence rule is similar to the `sufficiency of the evidence' standard applied in judicial review of jury verdicts, and evidence is sufficient to sustain an agency finding if it affords a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . (I)t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury. . . ." Laufer v. Conservation Commission, 24 Conn. App. 708, 715 (1991). A trial court may grant relief on appeal from an administrative agency "only where the local authority has acted illegally or arbitrarily or has abused its discretion." Raybestos-Manhattan, Inc. v. Planning Zoning Commission, 186 Conn. 466, 470 (1982) (citation omitted).
The burden of proof to demonstrate that the local authority acted improperly is upon the plaintiff. Adolphson v. Zoning Board of Appeals, 205 Conn. 703, 707 (1988); Burnham v. Planning Zoning Commission, 189 Conn. 261, 266 (1983). Although raised in the complaint, issues which are not briefed are considered abandoned. State v. Ramsundar, 204 Conn. 4, 16
(1987); DeMilo v. West Haven, 189 Conn. 671, 681-82 n. 8 (1983).
V. AUTHORITY AND DUTIES OF THE PZC GENERALLY
When one files a verified pleading of intervention under section 22a-19 (a), the PZC has the following duty under section 22a-19 (b):
 (b) In any administrative, licensing or other proceeding, the agency shall consider the alleged unreasonable pollution, impairment or destruction of the public trust in the air, water or other natural resources of the state and no conduct shall be authorized or approved which does, or is reasonably likely to, have such effect so long as, considering all relevant surrounding circumstances and factors, there is a feasible and prudent alternative consistent with the reasonable requirements of the public health, safety and welfare.
Connecticut General Statutes Section 22a-19 (b) (rev'd to 1989); Mystic Marinelife, 175 Conn. at 499, 501-2; see also Red Hill Coalition, 212 Conn. at 735. Not all pollution is unreasonable, however, and only unreasonable pollution shall not be authorized. Manchester Environmental Coalition v. CT Page 5763 Stockton, 184 Conn. 51, 59-60, 58 n. 9 (1981); Mystic Marinelife, 175 Conn. at 503. The question of what is reasonable is one of fact, and where "the record reasonably supports the conclusion that the proposed permit activity would not have the effect interdicted by Section 22a-19
(b)," the trial court must sustain that conclusion. Mystic Marinelife, 175 Conn. at 502, 503. Under section 22a-19 (b), the PZC need determine whether a "feasible and prudent alternative" exists only if it first finds that the activity proposed has, or is reasonably likely to have, the effect of unreasonably polluting, impairing or destroying natural resources of the state which come within its jurisdiction to regulate. Connecticut General Statutes Section 22a-19 (b) (rev'd to 1989); Mystic Marinelife, 175 Conn. at 499; Connecticut Fund for the Environment, 192 Conn. at 250-51.
In exercising its function of approving or disapproving any particular subdivision plan, a planning authority acts in an administrative capacity. Reed v. Planning Zoning Commission, 208 Conn. 431, 433 (1988). "The planning commission, acting in its administrative capacity herein, has no discretion or choice but to approve a subdivision if it conforms to the regulations adopted for its guidance." Id. (citation omitted).
Section 4 of the Subdivision Regulations contains "final plan requirements" with respect to certain maps and plans which are to be part of a subdivision application. (ROR #132, Subdivision Regulations, section 4.) The "design requirements" which must be satisfied prior to approval of a subdivision plan are set forth in section 5 of the Subdivision Regulations. (ROR #132, Subdivision Regulations, section 5.) Pursuant to section 8-26 of the General Statutes and section 5.7 of the Subdivision Regulations, the PZC may grant waivers of requirements of the Regulations under certain circumstances. (ROR #132, Subdivision Regulations, section 5.7.) Connecticut General Statutes Section 8-26 (rev'd to 1989, as amended.)
Also, section 8-26 provides that if "an application involves land regulated as an inland wetland or watercourse under the provisions of chapter 440, the applicant shall submit an application to the agency responsible for administration of the inland wetlands regulations. . . ." Connecticut General Statutes Section 8-26 (rev'd to 1989, as amended). In turn, the planning commission "shall not render a decision until the inland wetlands agency has submitted a report with its final decision to such commission. In making its decision the commission shall give due consideration to the report of the inland wetlands agency." Connecticut General Statutes Section 8-26 (rev'd to 1989, as amended.) (See also CT Page 5764 ROR #132, Subdivision Regulations, section 3.2.)
VI. PLAINTIFF'S ENVIRONMENTAL CLAIMS
A reading of plaintiff's brief shows that his quarrel is with the type of evidence presented by Reynolds. Throughout his brief, plaintiff claims that certain environmental reports, surveys, studies, samplings, calculations, statistical analyses, monitoring and the like should have been performed and/or required. (Plaintiff's Brief.) During the proceedings before the PZC, plaintiff introduced numerous exhibits, almost all of which were publications concerning environmental issues but which did not address the applicant's specific proposal. (See ROR #46-#54; #56; #106; #111-#115; #117-#129; #141; #143-#145; see also ROR #4; #5; #104.) Plaintiff concludes that he "has provided substantial evidence that by the applicant failing to provide sufficient empirical data, analysis and evaluations, there is a reasonable likelihood of unreasonably polluting, impairing and destroying the public trust in the natural resources of the site and region. Unquestionably, the PZC was without sufficient and adequate information to render a determination." (Plaintiff's Brief, pp. 12-13.)
In the context of discussing the burden of proof in a claim for injunctive relief against alleged anticipated pollution in Manchester Environmental Coalition v. Stockton,184 Conn. 51, 60 (1981), the court said, "in some cases, no doubt, testimony by expert witnesses may be sufficient. . . . While in other actions the (applicant) may find it necessary to bring forward field studies, actual tests, and analyses which support its contention that the environment has not or will not be polluted, impaired or destroyed by his conduct. Such proof becomes necessary when the impact upon the environment cannot be ascertained with any degree of reasonable certainty absent empirical studies or tests."
However, this is not such a case. The plaintiff made no showing that the applicant's specific proposal would unreasonably pollute, impair or destroy the environment, or even that the impact of the applicant's proposal on the environment could not be ascertained. But, even if it were, the record is replete with testimony of expert witnesses, reports, analyses, calculations and studies that taken together constitute substantial evidence in the record to justify the Commission's decision.
Moreover, it is clear that the failure of an applicant to submit a certain type of data can never, in and of itself, amount to proof that his proposal is reasonably CT Page 5765 likely to unreasonably pollute. The real issue is whether the evidence in the record supports a finding that unreasonable pollution is not reasonably likely to occur.
Furthermore, as already noted, one who intervenes pursuant to section 22a-19 in proceedings for subdivision approval before a planning authority is limited to raising those environmental issues which are within the planning authority's power to determine. See Connecticut Fund for the Environment, supra, 192 Conn. at 250-51. In his verified pleading of intervention, his complaint and his brief, plaintiff makes numerous assertions about the impact that the proposal will have on wetlands, on wetlands habitats, vegetation and wildlife. He recounts the testimony which his experts gave before the Waterford Conservation Commission and cites to record items from the appeal of the Conservation Commission's decision. He also quotes from and refers to the Inland Wetlands and Watercourses Act and Regulations in his intervention petition and his brief. (See ROR #23; Plaintiff's Brief, pp. 9-10, 12, 15, 22, 25-27.) In his complaint, plaintiff alleges that the PZC "failed to analytically assess and evaluate the project's impact to the wetlands." (Amended Complaint, par. 20.) However, the agency which has this responsibility in Waterford is the Conservation Commission. See Connecticut General Statutes Section 22a-42 (rev'd to 1989). Plaintiff also incorrectly argues that the PZC is governed by the requirement found in section 22a-41 that feasible and prudent alternatives be considered. (Plaintiff's Brief, pp. 21-27.) However, section 22a-41 pertains to the issuance of permits by the commissioner of environmental protection and inland wetlands and watercourses agencies. See Connecticut General Statutes Section 22a-42a(d) (rev'd to 1989, as amended by Connecticut Public Acts No. 89-356, Section 16 (1989)); Connecticut General Statutes Section22a-27 (rev'd to 1989); A.D.A.M. Land Development Corporation v. Conservation Commission, 21 Conn. App. 122, 129-30 (1990). And section 22a-19 (b), as already noted, only requires the PZC to determine whether a "feasible and prudent alternative" exists if it finds that the activity proposed has, or is reasonably likely to have, the effect of unreasonably polluting, impairing or destroying natural resources of the state which come within its jurisdiction to regulate. Connecticut General Statutes Section 22a-19(b) (rev'd to 1989).
Plaintiff also attempts to challenge the decision of the Conservation Commission in his brief even though he acknowledges that in this case he is appealing the decision of the PZC. (See, e.g., Plaintiff's Brief, pp. 1-4, 7, 7-11, 12,15-16, 18, 21, 25-27.) Concerning permit #89-34, which is the CT Page 5766 permit issued by the Conservation Commission (see ROR #11), plaintiff requests the Court to take "selected judicial notice" of his brief filed in his appeal from the Conservation Commission's decision. (Plaintiff's Brief, pp. 3-4.) As the instant appeal is from the PZC's decision only, plaintiff's attempts to get further review of the Conservation Commission's decision is inappropriate, and this claim has no merit.
Similarly, plaintiff argues that the applicant has not shown that the detention basins, which are designed for a 25-year storm, will be effective in treating pollution for events less than or greater than a 25-year storm. However, plaintiff does not argue that the Subdivision Regulations require detention basins to be designed for a particular event or that they be designed to treat pollution in any and all events. Rather, he asserts that the (Subdivision) "Regulations provide no criteria, methodology or standards for assessing, evaluating and mitigating the impact of pollution on water quality for the uplands or wetlands." Plaintiff argues that "the Inland Wetlands and Watercourses Act . . . and the IWA regulations provide measures for studying and minimization of water pollution." He concludes by requesting the Court to "take judicial notice of his brief in the companion appeal from the decision of the IWA" (D.N. 512967). (See Plaintiff's Brief, pp. 11-12.) Thus, again the plaintiff is improperly relying on the Inland Wetlands and Watercourses Act and Regulations and apparently on the record in his appeal from the Conservation Commission's decision to support his argument concerning the adequacy of the basins to control and treat stormwater runoff. Again, these claims are based on statutes and regulations which do not govern the PZC and are not properly embraced in an appeal from its decision, and lack merit.
Except for the instances discussed below, plaintiff has not identified any sections of the Subdivision Regulations or subdivision statutes which give the PZC the power when acting on Reynolds' subdivision application to consider the environmental issues which plaintiff raises. Indeed, in his brief, plaintiff complains that the "PZC's Regulations lack sufficient specificity for environmental and ecological information which form a sufficient basis for protection of wetlands/watercourses." (Plaintiff's Brief, p. 22.) Similarly, in his complaint, plaintiff states that the Regulations of the PZC "are inadequate for the protection, preservation and enhancement of the natural resources on the site and regionally." (Amended Complaint, par. 23.) However, as previously stated, the PZC is not the authority charged with regulating activities affecting wetlands and watercourses. See CT Page 5767 Connecticut General Statutes Section 22a-42, (rev'd to 1989). Nor is it a "little environmental protection agency" charged with regulating environmental impacts in general. See Connecticut Fund for the Environment, supra,192 Conn. at 250-51; see also Connecticut General Statutes Section 22a-2
(a) (rev'd to 1989, as amended by Connecticut Public Acts No. 89-224, section 11 (1989) (jurisdiction of state DEP).
Also, in his brief and at the public hearing, plaintiff argues that because section 8-26 requires the PZC to give "due consideration" to the report of the Conservation Commission, the PZC is required to analyze the environmental issues contained in that report. (Plaintiff's Brief, p. 15; ROR #4, pp. 67-68.) Thus, he appears to be arguing that the environmental issues within the Conservation Commission's jurisdiction are also within the PZC's jurisdiction to decide simply because the PZC must give "due consideration" to the report of the Conservation Commission.
In support of this argument, plaintiff cites Red Hill Coalition v. Town Plan Zoning Commission,212 Conn. at 733-34 n. 7, which was an appeal from the granting of a subdivision application. In footnote 7, the court stated:
 The defendants rely on Delaney v. Planning Zoning Commission, Superior Court, Judicial District of Hartford-New Britain at Hartford, Docket No. 258389 (September 16, 1985). In Delaney, the Superior Court held that the plaintiffs had no right to intervene under General Statutes Section 22a-19 (a) in a subdivision review proceeding because such a proceeding was not a permit procedure or process. Specifically, the court stated that because the planning and zoning commission was required to approve a subdivision application if it conformed to the conditions stated in the applicable regulations, the commission had no discretion to consider environmental issues. In the present case the trial court concluded that because the TPZ considered environmental issues by reviewing the conservation commission's report, intervention in a zoning commission hearing was appropriate under section 22a-19(a). The trial court declined, however, to state whether section 22a-19(a) "applies to ab initio CT Page 5768 subdivision review without the mandatory prior determination of environmental issues" as was decided by the Superior Court in Delaney v. Planning Zoning Commission, supra. We decline to adopt the reasoning set forth in Delaney, as we conclude that the language in section 22a-19(a) clearly and unambiguously allows intervention in "any" administrative hearing or other proceeding.
Red Hill Coalition, 212 Conn. at 733-34 n. 7. Clearly, the court accepted neither the view expressed in Delaney nor the view expressed by the trial court below in that case, but held that intervention pursuant to section 22a-19 in proceedings concerning a subdivision application was proper because section 22a-19(a) allows for intervention in "any" administrative proceeding. Id. At the time Red Hill Coalition v. Town Plan Zoning Commission was decided, the court had already held that an intervenor, on appeal, may only raise environmental issues within the jurisdiction of the authority whose decision is being challenged. Connecticut Fund for the Environment, supra, 192 Conn. at 250-51. Therefore, the holding in Red Hill Coalition v. Town Plan Zoning Commission in no way expands the jurisdiction of planning authorities to include environmental matters within the jurisdiction of inland wetland agencies. See Red Hill Coalition,212 Conn. at 733-34 n. 7.
That plaintiff's argument with regard to the "due consideration" language of section 8-26 lacks merit is further demonstrated by Frechette v. Town Planning and Zoning Commission, 3 CSCR 70 (December 1, 1988, Reilly, J.), in which the court discussed the meaning of the phrase "due consideration" in section 8-26. Reviewing the legislative history of the amendment adding the "due consideration" requirement, the court held:
 Although this amendment was designed to foster a relationship between planning commission (sic) and inland wetlands agencies, such that the former had notice of and information regarding the activities of the latter, it was not intended to make a wetlands agency and a planning commission into one decision-making body. The legislative history indicates that a planning commission giving "due consideration" to a wetland agency report denying an application could CT Page 5769 properly deny the application or postpone the application until the wetland agency granted a second or revised application. It is clear that the legislature did not intend for planning commissions to review decisions on (sic) inland wetlands agencies.
Frechette, 3 CSCR at 71.
In this case, the record contains a report from the Conservation Commission of its recommendations to the PZC. (ROR #10.) A copy of the conservation permit, including the numerous conditions attached to it, was also before the PZC. (ROR #11.) Thus, in granting the subdivision application, the PZC did not approve a plan that the Conservation Commission had rejected. By raising environmental issues associated with wetlands in proceedings before the PZC, plaintiff attempted to obtain review of the Conservation Commission's decision by the PZC. This is clearly not the intent of the requirement that the PZC give "due consideration" to the report of the Conservation Commission. Frechette, 3 CSCR at 71 (quotation above). The record abundantly shows that the PZC gave "due consideration" to the Conservation Commission's report and was not required to re-examine the latter's decision.
Thus, it is evident plaintiff has confused the respective obligations of the PZC and the Conservation Commission. Moreover, plaintiff's intervention did not change the nature of the proceedings before the PZC or expand the PZC's jurisdiction; see Connecticut Fund for the Environment, supra, 192 Conn. at 250-51; and the PZC was required to approve the application if it found that the proposal complied with the applicable sections of the Subdivision Regulations; Reed, supra, 208 Conn. at 433. Simply because plaintiff filed an intervention petition under section 22a-19 does not mean that the applicant must meet requirements in addition to or more stringent than those contained in the Subdivision Regulations to obtain subdivision approval. See Connecticut Fund for the Environment, supra, 192 Conn. at 250-51; Reed, supra, 208 Conn. at 433. Therefore, to the extent that plaintiff has failed to identify and analyze applicable sections of the Subdivision Regulations and/or General Statutes governing planning authorities upon which he is relying to support his environmental claims, relating to such issues as site ecology, picnic table layout, the existence of federally threatened or endangered species, wildlife management and the like, he has failed to show that the environmental issues which he raises are within the jurisdiction of the PZC to decide. Therefore, such CT Page 5770 environmental claims have no merit in the context of this appeal.
To the extent that plaintiff does refer to sections of the Subdivision Regulations showing that the PZC had the jurisdiction to consider certain environmental issues in acting on Reynolds' application for subdivision approval, plaintiff must not only show that the record does not support a finding of compliance with the Subdivision Regulations since only then would the PZC have the power to deny the application, but that any such lack of compliance would require the PZC to conclude that the proposed activities are reasonably likely to cause unreasonable pollution. "The limited environmental issue involved here is whether the proposed project under the challenged permit (or approval) is reasonably likely to cause unreasonable pollution, impairment or destruction" of natural resources within the jurisdiction of the PZC to regulate. Mystic Marinelife, 175 Conn. at 500; see Connecticut Fund for the Environment, 192 Conn. at 250-51.
With regard to erosion and sedimentation controls, plaintiff argues:
 The Regulations provide erosion and sediment requirements using the State of Connecticut, Guideline (sic) for Soil Erosion and Sedimentation Control. However, the provisions are inadequate, because the applicant neglected to use Chapter 10 of the guideline to determine the quantity of erosion/sedimentation during the construction phase. The need for such calculations is obvious to determine the sufficiency of the control measures. Additionally, the RMDC (Reynolds) neglected to determine the effectiveness and efficiency of the control measures in retarding the discharge of eroded materials.
(Plaintiff's Brief, p. 12.) At the public hearing, plaintiff stated that "chapter 10, has the calculations to be used for determining the amount of erosion that can be expected from a site, as a function of time. (ROR #4, p. 59.)
Section 4.5 of the Subdivision Regulations sets forth erosion and sedimentation control plan requirements. (ROR #132, Subdivision Regulations, Section 4.5.) Section 4.5.1 provides: CT Page 5771
PURPOSE:
 In order to minimize the erosion of topsoil and the depositing of sediments in drainage structures and watercourses in the Town of Waterford, the Commission shall require that plans for the subdivision of land include measures the applicant will take to control erosion and sedimentation during the construction of the subdivision and to prevent its occurrence after completion of the subdivision. It is the intent of this regulation that soil erosion and sediment control plans shall result in subdivision development that: minimizes erosion and sediment during construction; is stabilized and protected from erosion to the satisfaction of the Planning Zoning Commission when completed, and does not cause off-site erosion and/or sedimentation.
Section 4.5.3.1 states:
 To be eligible for certification, a soil erosion and sediment control plan shall contain proper provisions to adequately control accelerated erosion and sediment and reduce the danger from stormwater run-off on the proposed site based on the best available technology. Such principles, methods and practices necessary for certification are found in the "Connecticut Guidelines for Soil Erosion and Sediment Control (1985)," as amended. Alternative principles, methods and practices may be used with prior to (sic) approval of the Commission.
Section 4.5.3.2 lists the items which an erosion and sedimentation plan must contain. Section 4.5.4 provides:
MINIMUM ACCEPTABLE STANDARDS
 4.5.4.1 — Plans for soil erosion and sediment control shall be developed in accordance with these Regulations using the principles as outlined in Chapters 3 and 4 of the "Connecticut Guidelines for Soil Erosion and Sediment Control" (1985), CT Page 5772 as amended.
 4.5.4.2 — The minimum standards for individual measures are those in the "Connecticut Guidelines for Soil Erosion and Sediment Control" (1985), as amended. The Commission may grant exceptions when requested by the applicant if technically sound reasons are presented in writing.
 4.5.4.3 — The appropriate method from Chapter 9 of the "Connecticut Guidelines for Soil Erosion and Sediment Control" (1985), as amended, shall be used in determining peak flow rates and volumes of run-off unless an alternative method is approved by the Commission.
Nowhere in the sections of the Regulations pertaining to erosion and sediment control plans are the calculations referred to by plaintiff as being explained in chapter 10 of the Guidelines discussed. (See ROR #132, Subdivision Regulations, Sections 4.5.1 — 4.5.7.3.) Nor is it clear what it is that plaintiff is claiming the applicant failed to do since the Guidelines are not part of the record.,
Also, the PZC made the following findings with regard to erosion and sedimentation control plans:
 (1) The Commission finds that the plans with modifications listed herein are sufficient to certify compliance with the erosion control regulations. (4.5.3.)
 (2) The stormwater quality basins are considered equivalent to detention basins for construction purposes as detailed in the Guidelines for Soil Erosion and Sediment Control.
 (3) The calculations and information submitted on the drainage system indicates that detention will be required for Nevins Brook and not for Jordan Brook. Jordan Brook will have the capacity to handle the increased flows when the Route 1 culvert is replaced, which is considered necessary to mitigate potential downstream impacts associated with not providing for full stormwater detention. Other potential CT Page 5773 flooding considerations have been addressed by the applicant in the submissions to the Commission in that the development will not increase the flood elevation of the brook.
 (4) The sequencing provided will require a staged approach that insures that excavated areas are not left open to erosion.
 (5) The basins are intended to provide for stormwater renovation to preserve the water quality of the receiving waters.
(ROR #133, Attachment B, pp. 4-5.) These findings are supported by the evidence in the record including testimony of Mr. Ellis from Buck Buck, Engineers in Hartford (ROR #3, pp. 34-38), testimony of Peter Letourneau with the firm of Haley 
Aldrich in Glastonbury (ROR #3, pp. 41-48), testimony of Clint Brown with DiCesare-Bentley, Engineers (ROR #3, pp. 48,54-61), related reports and memoranda (ROR #1, pp. 1-3; #2; #8, #34, #67) and the report/decision of the Conservation Commission to which "due consideration" was given (ROR #11).
The plaintiff neither moved to correct the record to include the "Connecticut Guidelines for said Erosion and Sediment Control," nor did he incorporate chapter 10 or any pertinent portions claimed by him to support his claim in his brief or in an appendix thereto, so that the Court could determine exactly which calculations are lacking. The PZC made a specific finding, as noted above, that "the plans with modifications . . . are sufficient to certify compliance with the erosion control regulations." The regulations refer to the guidelines. The PZC must be presumed to have done its duty until the contrary appears. Because public officers, acting in their official capacities are presumed, until the contrary appears, to have acted legally and properly; (citations omitted) the burden is on the plaintiff to demonstrate that the PZC did not require the applicant to furnish the specific calculations the plaintiff claims were necessary. See Huck v. Inland Wetlands Watercourses Agency, supra, 203 Conn. at 537.
"It is the burden of the plaintiff challenging the administrative action to establish that the record does not support the action of the agency." Red Hill Coalition, Inc., supra, 212 Conn. at 718.
The plaintiff has simply failed to sustain his CT Page 5774 burden of proof on this issue, and his claim lacks merit.
With regard to the issue of open space, plaintiff laments that the Subdivision Regulations do not command the Commission to require open space. He also states that "RMDC (Reynolds) and the PZC failed to demonstrate that either the Common Facilities Element of the Plan of Development or any other plans of the town provided concise requirements, specifications or adequately specific guidelines for the planned management of open space. In fact, there is a paucity of direction relative to open space in the Plan of Development." (Plaintiff's Brief, p. 6.) Then plaintiff argues that Reynolds and the PZC failed to demonstrate that the open space plan complied with "specific recommendations in the vacuous Community Facilities Element of the Plan of Development." (Plaintiff's Brief, p. 7.)
Section 5.4 of the Regulations governs the question of open space; Section 5.4.1, cited by plaintiff, provides:
 GENERAL REQUIREMENTS — The Commission may require open space for parks and playgrounds when deemed proper by the Commission, with particular attention to open space recommendations in the Community Facilities Element of the Plan of Development.
(ROR #132, Subdivision Regulations, Section 5.4.1.) Thus, it is clear that there is no requirement that the PZC insist upon open space; only, that it may require it. Also, the Plan of Development is only advisory, providing "recommendations" which the PZC is to consider when determining whether it will require open space.
Furthermore, the PZC found that the plan adequately sets aside and protects areas recommended for preservation in the Plan of Development. (ROR #133, Attachment B, pp. 4, 8-9; see also ROR #130, #131.) It is evident that the PZC's decision with regard to open space considerations is supported by substantial evidence in the record including the testimony of Mr. Richter from the firm of Johnson and Richter, Landscape Architects of Avon (ROR #3, pp. 16, 27-30; #4, pp. 123-125), the testimony of Thomas Wagner, Town Planner (ROR #3, pp. 75-78; #4, pp. 6-7, 18-20); a report from the Waterford Recreation and Parks Commission (ROR #39), the recommendations and report of the Conservation Commission (ROR #10; #11), and supporting documents from Reynolds (ROR #2, "Open Space;" #67, paras. 1.3, 5.17; #95; #96.)
Plaintiff argues that the "open space is not sympathetic CT Page 5775 with the landscape" in violation of section 5.1 of the Regulations "and results in considerable disturbance to the area west of Jordan Brook." Section 5.1 provides.
 GENERAL CONSIDERATIONS — Land to be subdivided shall be of such character that it can be used for building purposes without danger to health and public safety. Every effort shall be made to locate streets, building lots and open space in a manner that is sympathetic with the landscape and results in a minimum disturbance of the natural terrain and vegetation.
(ROR #132, Subdivision Regulations, Section 5.1.) The testimony and evidence cited to above does not support plaintiff's claim but rather supports a finding to the contrary, and this claim lacks merit.
Plaintiff asserts that the town is in the process of developing open space recommendations and that the approval of the application should have been conditioned on consistency with this future plan. However, no authority is cited which would support the claim that an applicant's plan must conform to unapproved regulations or requirements which are not yet in effect.
Based on the foregoing, plaintiff has failed to demonstrate that the evidence in the record does not support a finding that the applicant's proposal is not reasonably likely to cause unreasonable pollution, impairment or destruction of natural resources within the PZC's jurisdiction to regulate when acting on a subdivision application. Plaintiff claims that the PZC was required but failed to consider whether "feasible and prudent alternatives existed, and that it should have used the federal EPA's "market entry" theory or a similar theory to do so. However, as already noted, section 22a-19
does not require the consideration of alternatives unless there is a finding that the proposal is reasonably likely to cause unreasonable pollution, impairment or destruction of natural resources. And since the record does not support such a finding, plaintiff has failed to show that the PZC was required to determine whether feasible and prudent alternatives existed. See Connecticut General Statutes Section 22a-19 (b) (rev'd to 1989); Mystic Marinelife, supra, 175 Conn. at 499.
VII. PLAINTIFF'S REMAINING CLAIMS
Plaintiff argues that Reynolds provided no CT Page 5776 calculations or analysis showing compliance with section 5.8 of the Subdivision Regulations. As authorized by section8-25 (b) of the General Statutes, section 5.8 provides that "subdivisions shall be planned and designed to encourage energy conservation, energy efficient development patterns, and the use of renewable energy forms" through use of certain stated "guidelines," which relate to such topics as solar access, wind barriers, and the like. (ROR #132, Subdivision Regulations, Section 5.8.1.) However, plaintiff has not argued or provided any evidence that the lack of calculations or analyses in noncompliance with section 5.8 is reasonably likely to cause unreasonable pollution, impairment or destruction of the public trust in a natural resource of the state within the PZC's jurisdiction to regulate. Therefore, in this instance, plaintiff has failed to raise an environmental issue and he lacks standing to challenge the PZC's decision on grounds that Reynolds failed to show compliance with section 5.8 of the Subdivision Regulations. See Red Hill Coalition,212 Conn. at 734; Mystic Marinelife, 175 Conn. at 490.
Similarly, plaintiff claims that the PZC granted Reynolds a waiver of section 5.6.6 of the Subdivision Regulations concerning the length of cul-de-sacs without a showing of hardship as required by section 5.7 of the Regulations. However, plaintiff has not articulated in his brief how the granting of the waiver as opposed to requiring compliance with section 5.6.6 is reasonably likely to cause unreasonable pollution, impairment or destruction of the public trust in a natural resource within the PZC's jurisdiction to regulate. Rather, plaintiff refers again to the Inland Wetlands and Watercourses Act and the Environmental Protection Act to argue that it is not in the public's interest to "fragment habitat" and "destroy wildlife." (See Plaintiff's Brief, pp. 27-29.) Whether or not Reynolds requested the waiver and stated the grounds therefor in writing as required by section 5.7.3 of the Subdivision Regulations is not an environmental issue. In any event, the record does contain the required application and statement of grounds. (ROR #2, "Evidence of Submittals.") Thus, the plaintiff's challenge to the granting of the waiver is not properly before this Court and has no merit.
Plaintiff claims that the PZC improperly treated plaintiff as a member of the public rather than as an intervenor. Plaintiff argues that as an intervenor, he was a party to the proceedings. Citing Wadell v. Zoning Board of Appeals, 136 Conn. 1, 8-9 (1949) and Pizzola v. Planning 
Zoning Commission, 167 Conn. 202, 207 (1974), plaintiff claims that due process requires that the parties involved have an opportunity to know the facts on which the PZC is asked to CT Page 5777 act, to cross examine witnesses, and to offer rebuttal evidence.
However, the Connecticut Supreme Court has clearly stated:
 (A) municipal planning commission, in exercising its function of approving or disapproving any particular subdivision plan, is acting in an administrative capacity and does not function as a legislative, judicial or quasi-judicial agency, which would require it to observe the safeguards, ordinarily guaranteed to the applicants and the public, of a fair opportunity to cross examine witnesses, to inspect documents presented, and to offer evidence in explanation or rebuttal and of the right to be fully apprised of the facts upon which action is to be taken, as exemplified in such cases as Parish of St. Andrew's Protestant Episcopal Church v. Zoning Board of Appeals, 155 Conn. 350, 232 A.2d 916 (1967), and Wadell v. Board of Zoning Appeals, 136 Conn. 1, 68 A.2d 152 (1949). See 2 Am. Jur.2d, Administrative Law, Section 403.
Reed, 208 Conn. at 433. This was also noted in Wadell: "In those cases where it has been held that there was no right to cross examine witnesses before an administrative board, it was not acting in such a quasi-judicial capacity as was the board in the present case." Wadell, 136 Conn. at 9 (citations omitted). Similarly, Pizzola, involved a zone change and, thus, legislative action of the commission. Pizzola,167 Conn. at 203.
Although the PZC told plaintiff that his request for intervenor status was denied (ROR #4, p. 67; #5, pp. 81-82; (77); in fact, the PZC allowed plaintiff to file his verified pleading on the first evening of the public hearing. (ROR #3, pp. 4-5, 7-8.) The PZC also permitted plaintiff to testify extensively and introduce numerous exhibits at the public hearing, (See, e.g., ROR #3, pp. 4-5, 7-8, 84; #4, pp. 26-71; #5, pp. 9-11, 79-82, 85-86, 97-100.) Plaintiff also was allowed to examine witnesses. (See, e.g., ROR #4, #5, #80, #105.) An opportunity for rebuttal was denied because it would have required a third continuance of the hearing. (ROR #5, pp. 97-99, 106-107.) However, plaintiff has not shown that he was prejudiced thereby. Plaintiff also requested and was granted an opportunity to make closing statements at the public CT Page 5778 hearing. (ROR #5, pp. 83, 99-100.) Therefore, plaintiff was a party for all intents and purposes, and was treated as such.
Also, in his verified pleading of intervention, plaintiff asked the PZC to take "judicial notice" of various materials pursuant to section 4-178 of the General Statutes. (ROR #23, pp. 7-8.) Section 4-178 is part of the Uniform Administrative Procedure Act (hereinafter referred to as the "UAPA") and allows an "agency" to take notice of "judicially cognizable facts and of generally recognized technical or scientific knowledge" in "contested cases." Connecticut General Statutes Section 4-178 (6) (rev'd to 1989, as amended by Connecticut Public Acts No. 88-317, Section 14, 107 (1988). However, the PZC is not an "agency" under the UAPA, nor were the proceedings before the PZC a "contested case." See Klug v. Inland Wetlands Commission, 19 Conn. App. 713, 716-719 (1989). Plaintiff cites no section of the General Statutes or of the PZC regulations, which allows or requires the PZC to take such judicial notice.
Based on the foregoing, it cannot be said that the PZC deprived plaintiff of rights to participate in the proceedings before it, and this claim lacks merit.
Plaintiff amended his complaint to include a claim of denial of due process and one for punitive damages, both pursuant to 43 U.S.C. § 1983. However, plaintiff has not briefed his section 1983 claims and, therefore, they are deemed abandoned. State v. Ramsundar, supra, 204 Conn. at 16; DeMilo, 189 Conn. at 681-82, n. 8.
Plaintiff also claims that the PZC did not adequately articulate findings which support its decision. However, it is well established that if an agency fails to articulate its findings, the trial court does not dismiss the appeal but must search the record to determine whether there is an adequate basis for the agency's decision. Gagnon v. Inland Wetlands Watercourses Commission, 213 Conn. 604, 605,611 (1990). Furthermore, the issue, of whether the PZC failed to state its findings, as opposed to the issue of whether there is a lack of evidence to support the decision, is a non-environmental procedural issue which plaintiff, as an intervenor under section 22a-19, lacks standing to raise. Red Hill Coalition, supra, 212 Conn. at 734; Mystic Marinelife, supra, 175 Conn. at 490. In any event, the Court has searched the record and it contains substantial evidence to support the decision of the PZC.
Plaintiff, citing Feinson v. Conservation Commission, 180 Conn. 421 (1980), also asserts that "the CT Page 5779 agency" relied on information from its own staff, whose expertise "on complex environmental/ecological issues such as water pollution and the biochemistry of the food web" was not demonstrated, and concludes that "the agency" relied improperly on its own knowledge. He claims that "(n)one of the agency's members" demonstrated "expertise on the complex environmental/ecological issues before them." (Plaintiff's Brief, pp. 16-17.)
This argument appears in a section of plaintiff's brief in which he appears to argue that because the PZC must give "due consideration" to the Conservation Commission's report, the PZC must apply the Inland Wetlands and Watercourses Regulations and examine the action of the Conservation Commission. Similarly, plaintiff argues that because the PZC must consider the Conservation Commission's report, "an analysis of the report, is appropriate to the Court's consideration of this appeal" from the PZC's decision. Plaintiff goes on to attack the action of the Conservation Commission, claiming that certain environmental assessments were not made nor were they required as conditions of the conservation permit. Without such assessments, plaintiff concludes, "the agency must rely strictly upon narrative and its own knowledge" to evaluate environmental impacts. (See Plaintiff's Brief, pp. 15-19.) Thus, the plaintiff's claims about "the agency" having improperly relied upon its own knowledge or that of its staff is really an argument addressed to the Conservation Commission, not the PZC, and as such, is not properly raised in this appeal from the PZC's decision. As already discussed, the PZC is not required to examine the decision of the Conservation Commission by virtue of the "due consideration" language of section 8-26. Frechette, 3 CSCR at 71. Moreover, the determination of factual issues and the credibility of witnesses, even experts, are within the province of the Commission. Spectrum of Connecticut, Inc. v. PZC, 13 Conn. App. 159, 163 (1988). Therefore, this claim lacks merit.
Plaintiff, again citing Feinson, also contends that the Court is without expertise to review the record where environmental issues are concerned. However, Feinson was an appeal from the decision of an agency which relied on its own knowledge without revealing that knowledge to the applicant and the public so that there was no opportunity for rebuttal. The court there held:
 (A) lay commission acts without substantial evidence, and arbitrarily, when it relies on its own knowledge and experience concerning technically complex CT Page 5780 issues such as pollution control, in disregard of contrary expert testimony, without affording a timely opportunity for rebuttal of its point of view.
Feinson, 180 Conn. at 429. The Feinson court did not extend its holding to apply to courts, and the plaintiff cites no pertinent authority for this novel proposition. See Id. It has long been held that expert testimony is to be considered, weighed and tested like any other testimony. State v. Kelly,77 Conn. 266, 275 (1904). And, the law has traditionally recognized a trial court as a tribunal equipped to resolve disputed evidentiary issues, and as the final judge of credibility. Clark v. Haggard, 141 Conn. 668, 674 (1954). See cases such as: State v. Joly, 219 Conn. 234 (1991); Blake v. Blake, 207 Conn. 217 (1988); and Bond v. Benning, 175 Conn. 308
(1978). Therefore, this claim has absolutely no merit.
Plaintiff also claims that his intervenor status "should remain in effect" until "completion of all preconstruction conditions." However, plaintiff cites no authority which would support the maintenance of intervention status after the administrative and appeal proceedings into which one has sought to intervene have concluded, nor is this provided for in section 22a-19. See Connecticut General Statutes Section 22a-19 (rev'd to 1989). Therefore, this claim also lacks merit.
The plaintiff's appeal is dismissed.
TELLER, J.