ROBERT G. REED *v.* PLANNING AND ZONING COMMISSION OF THE TOWN OF CHESTER (13266)

PETERS, C. J., SHEA, CALLAHAN, GLASS and COVELLO, Js.

Argued May 4—decision released July 26, 1988

*Thomas P. Byrne,* for the appellant (defendant).
*Peter M. Sipples,* for the appellee (plaintiff).

GLASS, J. The defendant planning and zoning commission of the town of Chester (commission), having

been granted certification by this court, filed the instant appeal from a decision of the Appellate Court. See *Reed* v. *Planning & Zoning Commission,* 12 Conn. App. 153, 529 A.2d 1338 (1987). The Appellate Court, by a divided vote, upheld the judgment of the trial court, *Hale, J.,* that had sustained the administrative appeal of the plaintiff, Robert G. Reed, from a decision of the commission denying his application for a subdivision approval. The underlying facts set forth in *Reed* v. *Planning & Zoning Commission,* supra, are not in dispute. We summarize only those facts that are relevant to our consideration of this appeal.

On July 14, 1983, the plaintiff filed an application with the commission seeking approval to divide a 33.34 acre parcel of land in Chester into thirteen residential lots. Subsequently, at the request of the commission, lots one and two of the proposed subdivision were combined, resulting in an application for a twelve lot subdivision. The parcel of land is located on the east side of Turkey Hill Road in Chester. Turkey Hill Road is a public road that is partially unpaved. The unpaved section of the road is narrower than the paved section. At a duly noticed scheduled meeting of the commission, the subdivision application was denied on the ground that "[Turkey Hill Road] at the present time is inadequate to provide safe access and egress to the proposed lots for either residents or emergency vehicles." The plaintiff appealed to the Superior Court from the action of the commission.

The trial court sustained the plaintiff's appeal, finding that "there is no Chester subdivision regulation prohibiting the plaintiff's plan for planned residential development on a public town road in Chester and therefore its action in refusing approval was illegal," and relying on *RK Development Corporation* v. *Norwalk,* 156 Conn. 369, 377, 242 A.2d 781 (1968), and *Beach* v. *Planning & Zoning Commission,* 141 Conn.

79, 85, 103 A.2d 814 (1954). Thereafter, the commission appealed to the Appellate Court, which upheld the judgment of the trial court. See *Reed* v. *Planning & Zoning Commission*, supra. We granted the commission's petition for certification, limited to the issue of whether the Appellate Court erred in concluding that the commission could not properly deny a subdivision application for the reason that the town road abutting and serving the property was inadequate to provide safe access to the subdivision. We affirm.

At the outset, we note that "[a] municipal planning commission, in exercising its function of approving or disapproving any particular subdivision plan, is acting in an administrative capacity and does not function as a legislative, judicial or quasi-judicial agency, which would require it to observe the safeguards, ordinarily guaranteed to the applicants and the public, of a fair opportunity to cross-examine witnesses, to inspect documents presented, and to offer evidence in explanation or rebuttal and of the right to be fully apprised of the facts upon which action is to be taken, as exemplified in such cases as *Parish of St. Andrew's Protestant Episcopal Church* v. *Zoning Board of Appeals*, 155 Conn. 350, 232 A.2d 916 [1967], and *Wadell* v. *Board of Zoning Appeals*, 136 Conn. 1, 68 A.2d 152 [1949]. See 2 Am. Jur. 2d, Administrative Law, § 403. The planning commission, acting in its administrative capacity herein, has no discretion or choice but to approve a subdivision if it conforms to the regulations adopted for its guidance. *Langbein* v. *Planning Board,* 145 Conn. 674, 679, 146 A.2d 412 [1958]. If it does not conform as required, the plan may be disapproved." *Forest Construction Co.* v. *Planning & Zoning Commission,* 155 Conn. 669, 674–75, 236 A.2d 917 (1967).

The commission claims that it could properly deny approval of the plaintiff's subdivision application because the town road abutting and serving the prop-

erty was inadequate to provide safe access to the subdivision. Relying on General Statutes § 8-25,[1] the commission argues that the town of Chester has adopted subdivision zoning regulations that authorize the commission to deny approval of the plaintiff's application because of inadequate road access to the subdivision. According to the commission, the specific authority for its denial of the subdivision application is set forth in the subdivision regulations for the town of Chester, §§ 2.0, 3.1 and 3.2.[2]

---

[1] General Statutes (Rev. to 1983) § 8-25 (a) provides in part: "No subdivision of land shall be made until a plan for such subdivision has been approved by the commission. . . . Before exercising the powers granted in this section, the commissioner shall adopt regulations covering the subdivision of land. . . . *Such regulations shall provide that the land to be subdivided shall be of such character that it can be used for building purposes without danger to health or the public safety,* that proper provision shall be made for water, drainage and sewerage . . . that the proposed streets are in harmony with existing or proposed principal thoroughfares shown in the plan of development as described in section 8-23, especially in regard to safe intersections with such thoroughfares, and are so arranged and of such width, as to provide an adequate and convenient system for present and prospective traffic needs. . . . The commission may also prescribe the extent to which and the manner in which streets shall be graded and improved and public utilities and services provided . . . ." (Emphasis added.)

[2] Section 2.0 of the Chester subdivision regulations provides in part: "All land to be subdivided or re-subdivided shall be of such character that it can be used for building purposes without danger to health or the public safety."

Section 3.1 of the Chester subdivision regulations provides in part: "The following regulations and design standards shall apply to the planning and map layout of . . . lots . . . and other improvements and facilities shown on the subdivision map."

Section 3.2 of the Chester subdivision regulations provides: "The proposed lots shall be of such shape, size, location, topography and character that buildings can be reasonably constructed and that they can be occupied and used for building purposes without danger to the health and safety of the occupants and the public. Any lot which is found to be unsuitable for occupancy and building by reason of water or flooding conditions, unsuitable soil, topography, ledge rock or other conditions shall be combined with another lot that is suitable or shall be marked 'This is not an approved lot' on the subdivision map, until necessary improvements to the lot have been

We have reviewed these subdivision regulations and are unable to discern any authority, express or implied, for the action of the commission. Section 2.0 deals with the character of the land that "can be used for building purposes." Section 3.1 is concerned with the "planning and map layout of streets, lots, parks, recreation areas and other improvements and facilities shown on the subdivision map." Section 3.2, entitled "Building Lots," is concerned with lot shape, size, location, topography and character of the buildings that may be constructed on the lot. Existing town roads are not addressed in these sections.

The commission argues further that in discharging the duties imposed upon it by the provisions of § 8-25 and the subdivision regulations, it has the primary responsibility of reviewing a proposed subdivision plan of lots to be used for residential structures to determine whether the lots are "buildable." The commission argues that this requires it to find, on the basis of the record before it, that each lot in the proposed subdivision has access to the town road system and that there is a place on each lot for a house, well and septic system. If the record demonstrates that there is no access to the proposed lots, or, if there is inadequate access to the proposed lots from the town road system, then the lot is not buildable and the commission should disapprove the proposed subdivision.

We find no support for this argument in either § 8-25 or the subdivision regulations. Because the commission acts in an administrative capacity and is authorized only to apply the requirements set forth in the regulations to the facts, and because the regulations and statutes relied upon by it do not address problems relating to

made and approved by the Commission and a revised subdivision map has been submitted to and approved by the Commission. All proposed lots shall conform to the requirements of the Zoning Regulations of the Town of Chester."

existing roads, the commission exceeded its authority when it denied the subdivision application.

Furthermore, the commission misplaces reliance on *Forest Construction Co.* v. *Planning & Zoning Commission,* supra. In *Forest Construction Co.,* an application for subdivision approval was denied primarily because the proposed subdivision consisted of 110 lots and the *proposed* network of roads within the subdivision limited access and egress to one roadway over a bridge, and this roadway discharged all of its traffic at one intersection with a public road. Here, however, the commission denied approval of the subdivision application because the *town* road abutting and serving each parcel was inadequate to provide safe access to the subdivision.

The commission also relies on *Blakeman* v. *Planning Commission,* 152 Conn. 303, 206 A.2d 245 (1965). Like *Forest Construction Co., Blakeman* is inapposite to this case. In *Blakeman,* the plaintiff submitted a plan for the resubdivision of a parcel of land so that a road could be cut through the parcel to reach thirty-four contiguous acres owned by the plaintiff. The plaintiff's application was denied on the ground that the intersection of the proposed road with the existing road would not be safe because the roads would intersect on a slope, thus providing a "poor sight distance," and also because problems would arise with surface drainage on the existing road. We held that the conclusions reached by the commission were reasonable. Id., 308. This case, however, does not involve resubdivision or intersecting roads.

Moreover, the Chester subdivision regulations make provisions for inadequate existing town roads.[3] Under

---

[3] Section 3.3.6 of the Chester subdivision regulations, entitled "Existing Streets," provides: "Proposed subdivisions abutting on existing Town street or State Highway shall provide for proper widening of the right of

§ 3.3.6 of the subdivision regulations, the applicant of a proposed subdivision abutting an existing street must deed to the town land necessary to enable the town to improve the existing public road.[4] We agree with the Appellate Court that by complying with the provisions of § 3.3.6 of the subdivision regulations, requiring subdivision applicants to convey to the town the land necessary to widen an inadequate, unimproved town road, the applicant, upon so doing, has "fulfilled the requirements set forth in the regulations concerning adequate public access." *Reed* v. *Planning & Zoning Commission,* supra, 159.[5] Whether the commission possesses the authority to condition its approval of a subdivision application on the applicant's improvement of an existing town road abutting and serving the subdivision is not an issue in this case.[6]

---

way of such street or highway to the width appropriate for the classification given such street or highway by the Commission. Such provision shall be in the form of a deed dedicating sufficient land to the Town to enable the Town to widen the street or highway to the appropriate width from the center line of the street or highway to the proposed property lines of the subdivision."

[4] The plaintiff's subdivision application included the following statement: "The applicant will convey to the town of Chester a strip of land 8½ feet wide along the frontage of the subdivision property on Turkey Hill Road to the town of Chester for purposes of widening of the existing road." *Reed* v. *Planning & Zoning Commission,* 12 Conn. App. 153, 157 n.5, 529 A.2d 1338 (1987). The record does not indicate that the commission challenged the adequacy of the proffered strip of land to widen the road properly.

[5] The plaintiff argues that the commission could adopt a regulation to include the authority specifically identified as lacking in this case. The plaintiff suggests the following addition to the Chester subdivision regulations: "All presently existing public streets providing access to the proposed subdivision shall be in such condition as to safely accommodate the traffic generated by said subdivision." We express no opinion about the adequacy or the validity of the plaintiff's suggestion, and our reference to the suggestion is not to be construed as a recommendation.

[6] The plaintiff places heavy reliance on *Pope* v. *Planning & Zoning Commission,* Superior Court, judicial district of Middlesex, Docket No. 8239 (July 18, 1979). In *Pope,* the trial court would "not allow the town to impose a road improvement requirement on an applicant whose property fronted a town road. The road was unpaved, and the planning commission refused

Since the commission did not find that the plaintiff's subdivision application did not conform to the Chester subdivision regulations, but based its disapproval on reasons not provided for in the regulations, the denial of the plaintiff's subdivision application for that reason was improper.[7] Because the decision of the commission was administrative and the plaintiff's subdivision application conformed to the requirements of the subdivision regulations, the Appellate Court correctly upheld the judgment of the trial court sustaining the plaintiff's appeal from the denial of his subdivision application by the commission.

There is no error.

The decision of the Appellate Court is affirmed.

In this opinion PETERS, C. J., SHEA and COVELLO, Js., concurred.

CALLAHAN, J., dissenting. I respectfully dissent from the majority opinion for the reasons stated in Judge Berdon's dissenting opinion in *Reed* v. *Planning & Zoning Commission,* 12 Conn. App. 153, 159–63, 529 A.2d 1338 (1987). The majority holds that the Chester subdivision regulations upon which the planning and zoning commission of the town of Chester (commission)

to approve the sudivision because the road was unsafe for emergency vehicles as well as 'unsuitable and unsafe' for prospective residents and their guests. [The trial court] ordered the Killingworth planning commission to approve the application because its reason for the rejection was improper; the municipality has a clear obligation to itself maintain its public roads in a safe condition." T. Tondro, Connecticut Land Use Regulation (1983 Sup.) pp. 62–63. Since *Pope* was not appealed to this court we decline to express any opinion about its validity. It is sufficient for this case that we hold that the Chester subdivision regulations do not authorize the disapproval of a subdivision application for the reasons stated by the commission.

[7] We do not address the second concern raised by the dissent, that the Appellate Court erred in sustaining the portion of the trial court's opinion directing the commission to approve the plaintiff's application, because this issue is not within the question certified by this court. In addition, neither party addressed this issue in their briefs.

relied "do not address problems relating to existing roads,"and thereafter concludes that "the commission exceeded its authority when it denied the subdivision application." What the majority fails to recognize is that the commission assessed the suitability of the proposed subdivision and concluded that the safety of the residents and public was in jeopardy because Turkey Hill Road was inadequate "to provide *safe* access and egress to the proposed lots for either residents or emergency vehicles." (Emphasis added.) Not only do the subdivision regulations of Chester specifically require that the land proposed for subdivision be, inter alia, of such character and *location* that it can be constructed and occupied without danger to the health and safety of the occupants and the public; Chester Subdivision Regs., §§ 2.0, 3.1, 3.2; but General Statutes § 8-25, which is the enabling legislation, also specifically mandates that the town's subdivision regulations provide that the land to be subdivided shall be of such character that it can be used for building purposes without danger to health or public safety. While § 8-25 does not enumerate a list of safety factors that a zoning authority must consider in assessing an application for a subdivision, there can be no question that the safety or lack thereof to the residents of the subdivision and the public in general posed by the limited access to the subdivision are proper considerations for a zoning authority. See *Nicoli* v. *Planning & Zoning Commission,* 171 Conn. 89, 94–97, 368 A.2d 24 (1976); *Forest Construction Co.* v. *Planning & Zoning Commission,* 155 Conn. 669, 675, 236 A.2d 917 (1967); *North Landers Corporation* v. *Planning Board,* 382 Mass. 432, 437–38, 416 N.E.2d 934 (1981); *Diversified Properties, Inc.* v. *Planning Board,* 125 N.H. 419, 420, 480 A.2d 194 (1984); *Noble* v. *Mendham,* 91 N.J. Super. 111, 118–19, 219 A.2d 335, cert. denied, 48 N.J. 120, 223 A.2d 497 (1966). In fact, the existence of inadequate access roads to a proposed sub-

division has been held to be a sufficient ground upon which to deny the application for a proposed subdivision. See *DiCarlo* v. *Planning Board,* 19 Mass. App. 911, 913, 471 N.E.2d 753 (1984); *Malaguti* v. *Planning Board,* 3 Mass. App. 797, 797–98, 339 N.E.2d 246 (1975); *Brazer* v. *Mountainside,* 55 N.J. 456, 470–71, 262 A.2d 857 (1970); *Breuer* v. *Fourre,* 76 Wash. 2d 582, 583–85, 458 P.2d 168 (1969).

I further dissent from the majority's decision insofar as it sustains that portion of the trial court's judgment that orders the commission to grant the plaintiff's application for the approval of the subdivision. I believe the record raises significant questions regarding the suitability of this land for the twelve building lots proposed and the subdivision's compliance with other zoning regulations. It is only "[w]hen . . . it appears that as a matter of law there was but a single conclusion which the zoning authority could reasonably reach, [that] the court may direct the administrative agency to do or to refrain from doing what the conclusion legally requires. *Watson* v. *Howard,* 138 Conn. 464, 470, 86 A.2d 67 (1952); *Executive Television Corporation* v. *Zoning Board of Appeals,* 138 Conn. 452, 457, 85 A.2d 904 (1952); *Bishop* v. *Board of Zoning Appeals,* 133 Conn. 614, 623, 53 A.2d 659 (1947). In the absence of such circumstances, however, 'the court upon concluding that the action taken by the administrative agency was illegal, arbitrary or in abuse of its discretion should go no further than to sustain the appeal taken from its action. For the court to go further and direct what action should be taken by the zoning authority would be an impermissible judicial usurpation of the administrative functions of the authority.' *Bogue* v. *Zoning Board of Appeals,* 165 Conn. 749, 753–54, 345 A.2d 9 (1974); *Guerriero* v. *Galasso,* 144 Conn. 600, 608, 136 A.2d 497 (1957); *Watson* v. *Howard,* supra, 469–70." *Thorne* v. *Zoning Commission,* 178 Conn. 198, 206, 423

A.2d 861 (1979); see also *Chevron Oil Co.* v. *Zoning Board of Appeals,* 170 Conn. 146, 154, 365 A.2d 387 (1976).

In ordering that the commission be directed to approve the application, the trial court stated: "Since the sole reason given by the board for the denial of the application was the inadequacy of the existing road, it *must be taken* that the plaintiff has conformed with all of the other requirements of the regulations of the planning commission, and since there is no regulation prohibiting the plaintiff's plan on the basis cited by the planning commission, the action of the commission refusing approval was illegal." (Emphasis added.) I think the trial court based its order upon an assumption which, from the record, appears to be erroneous. The minutes of both hearings before the commission indicate potential problems with drainage, the presence of a high groundwater table, the absence of sufficient soil pockets to accommodate the installation and operation of septic systems, the existence of ledge, and the problems resulting from the subdivision's close proximity to routes 9 and 82. In view of the record, I believe serious questions remain regarding the suitability of the proposed subdivision for twelve dwellings.

In addition, I feel the record is unclear as to whether the conditions or problems noted above entered into or provided a basis for the commission's decision. While the commission voted to deny the application on safety grounds because of the inadequate access road, immediately after the commission's vote, a member of the commission further stated "for the record that the Commission's concerns about ledge, soils and groundwater conditions were based on the mandate to provide building lots which could be properly and conveniently built upon." It must also be noted that the commission's letter to Robert Reed that informed him of its decision reiterated the commission's concerns

regarding the intensity of the proposed development "because of ledge outcroppings, the poor soil conditions and the high groundwater table in the area." The letter further stated that "[s]hould you undertake to redesign this subdivision for submission at some future date, we recommend that close attention be given to the existing conditions of the parcel and the access provided over the unimproved portion of Turkey Hill Road."

Accordingly, I would sustain the decision of the commission and reverse the trial court. Since that eventuality is not about to occur, however, I would remand the matter for further hearings to determine whether the proposed subdivision was suitable for twelve dwellings and, in fact, complied with all applicable subdivision regulations of the town of Chester.