[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an appeal by plaintiff from the denial by the defendant Planning Commission of the Town of Ledyard of a subdivision application of 44 acres in the Town of Ledyard. In passing on a subdivision application, the commission acts in an administrative capacity, Town of Westport v. City of Norwalk, 167 Conn. 151, 156 (1974), and its discretion is limited and must address itself to the standards in the regulations. The commission acting in its administrative capacity has no discretion or choice but to approve a sub-division if that subdivision conforms to the regulations adopted for its guidance. Reed v. Planning Zoning Commission of the Town of Chester, 208 Conn. 431, 433 (1988). In the Court's review of the action of the Commission where the Commission gives more than one reason for its action, if any one of those reasons would support the action, the plaintiff must fail in its appeal. Crescent Development Corporation v. Planning Commission, 148 Conn. 145, 150 (1961).
The Court found at the hearing that the plaintiff is aggrieved, as it has proven that it is still the owner of the property for which the subdivision application was made. The parties are agreed that a subsequent condemnation of a small portion of the property by the United States government in no way impacts on the subdivision application or the plaintiff's aggrievement. The Court reaffirms its finding of aggrievement.
In denying the plaintiff's subdivision application, the defendant Commission based its decision on four sections of the town's subdivision regulations:
Section 3-1, which reads in part:
 Land of such character that it cannot be used safely for building purposes because of danger to health or the public safety, or aggravation of flood, drainage or sewerage, or water pollution hazard shall not be plotted for human occupancy until appropriate measures have been taken by the subdivider to eliminate such hazards.
Section 4-1(A), which reads in part:
 . . .The review shall take into consideration subdivision design and layout, protection of health, public CT Page 1675 safety, environment, and such other factors falling within the scope of responsibility of the planning commission as defined in Chapter 126 of the General Statutes, as amended.
Section 4-1(B), which reads:
 Land subject to flooding. . .shall not be subdivided for any use whereby danger to health or public safety may result.
Section 5-3(A), which reads in part:
 No subdivision shall be laid out in a manner which will obstruct or prevent efficient drainage of the land or surrounding lands or cause flooding in downstream areas.
In an additional three pages of its decision, the Commission basically set out three "issues" in which it specified how, in the Commission's judgment, the application failed to comply to the above-quoted portions of the sub-division regulations. Simply stated, the Commission found that there was a danger of increased storm water runoff and down slope flooding, the Commission found that the subdivision application failed to provide adequate septic system provisions for its eighteen lots, and finally the Commission found that the applicant had submitted inaccurate data because the Commission found that test pits were located in the field differently than as shown on applicant's maps as submitted to the Commission.
With respect to the Commission's concern about runoff and the danger of increased down slope flooding, there is considerable evidence in the record, although not perhaps expert evidence, that there is a down slope flooding issue in the area. There certainly is no question that this is an extremely sensitive site, and the fact that the subdivision application only seeks eighteen lots out of forty-four acres in a one acre zone indicates that everyone, the applicant included, has been aware of the sensitivity of the site throughout the process. The difficulty with the Commission's use of issue one as a reason for its decision is that it considered a memorandum from the town planner, as well as a study by the town planner, both of which were submitted after the conclusion of the public hearings on the application.
Plaintiff claims that these are ex parte CT Page 1676 communications, but the Court rejects that assertion. Clearly, commission members are entitled to technical and professional assistance in matters that are beyond their expertise, and that assistance may be rendered in executive session. Blaker v. Planning Zoning Commission, 212 Conn. 471, 478, citing Pizzola v. Planning Zoning Commission, 167 Conn. 202 (1974). However, the memorandum and the attached study was a devastating rebuttal of some testimony of plaintiff's engineer, and was based almost exclusively on the town planner's use of data in a 1968 water resources bulletin, and :an article therein entitled, Water Resources Inventory of Connecticut, Part 3, Lower Thames and Southeastern Coastal River Basins. (Return of Record, No. 68). Before an administrative agency may lawfully rely on material, nonrecord facts, it must allow a party adversely affected thereby an opportunity to rebut at an appropriate stage in the proceedings. Connecticut National Gas Corporation v. PUCA,183 Conn. 128, 139 (footnote 9) (1981).
Similarly, with respect to Issue No. 3, the Commission's finding that "several deep observation pits as shown on maps prepared by Fransen Consultants are incorrectly plotted, and do not accurately match locations of these pits as excavated in the field" finds no support anywhere in the record, and can only have been obtained from the Commission's personal inspection in the field. At oral argument it was suggested that the Commission determined the inaccuracy by noting the propinquity of flags which purportedly marked wetland boundaries to some of the test pits, but, "if an administrative agency chooses to rely on its own judgment, it has a responsibility to reveal publicly its special knowledge and experience, to give notice of the material facts that are critical to its decision, so that a person adversely affected thereby has an opportunity for rebuttal at an appropriate stage in the administrative proceedings." Feinson v. Conservation Commission, 180 Conn. 421, 428-429 (1980).
There can be no doubt from the language of the decision itself that, as far as Issues No. 1 and No. 3, the Commission has failed to provide the applicant with any notice that its findings in these two critical areas were being based on evidence and information outside the record properly before the Commission. It is also clear that the Commission relied extensively on both the data supplied by the town planner after public hearing, and the extra record facts concerning the accuracy of the test pit locations. The Commission's decision states as much. By doing this, the Commission "acted in a manner which placed its data base beyond the plaintiff's scrutiny." Feinson v. Conservation Commission, supra, at p. 428. Therefore, neither of these reasons can sustain the CT Page 1677 decision of the Commission.
It should also be noted that the Commission's reference to section 4-1(B) is without the support of substantial evidence in the record, since the land for which the subdivision application is made is simply not "land subject to flooding," and both parties agree that this is the case. The Court has reviewed the record and finds no other evidence to support the decision of the Commission other than that set forth in the second issue articulated by the Commission, the inadequacy of the septic system provisions.
It is certainly true, as plaintiff contends, that section 6-5(D) of the Ledyard Subdivision Regulations only requires a single percolation test and deep hole test per lot. It is, however, also true that the plaintiff must prove to the Commission that its plan complies with the requirements of the subdivision regulations, including the requirement under section 3-1 that the land on which the application is submitted is not, as designed, "of such character that it cannot be used safely for building purposes because of danger to health or the public safety, or aggravation of. . .sewerage, or water pollution hazard," as well as the similar reference in section 4-1(A). Obviously, anyone with any experience in subdivision applications is well aware of the fact that numerous test pits are routinely dug, and plaintiff does not seriously contend that only one test pit was appropriate in this situation. In any event, the applicant has provided in excess of 100 test pits and the information available from those test pits is appropriately reviewable, of course, by the Commission.
Return of Record, Item Nos. 16 and 52, two exhibits from the public hearing (numbered 6 and 42 at that hearing) are letters from the principal sanitarian of the State of Connecticut Department of Health. While the plaintiff is technically correct in asserting that those letters do not specifically state that the plaintiff's septic system as shown on the plans failed to meet the requirements of the Ledyard Subdivision Regulations or the State Public Health Code, the letters are certainly not capable of being mistaken for an endorsement of the proposal. Also, Return of Record Item 23 (Exhibit 13 at the public hearing), the letter from the Conservation Commission, expresses concern about the sewage disposal issue. Based on the applicant's own data as interpreted by the town planner (Return of Record Nos. 58 and 64) over 15,000 cubic yards of bank run gravel were going to be required as fill to construct septic systems on the eighteen lots in the planned subdivision. CT Page 1678
In this area, the action of the Commission in relying on its own general expertise (indeed some might say common sense) appears to be much closer to the conduct approved in Huck v. Inland Wetlands and Watercourses Agency, supra, than the proscribed commission conduct in Feinson v. Conservation Commission, supra. Nonetheless, the Court notes that the Commission in its decision states, "It can be asked why the Commission has chosen to deny the subdivision application in its entirety when it clearly has authority to approve it with conditions or stipulations. It is the Commission's opinion that the following deficiencies permeate and pervade the whole plan rather than taint individual lots. Because of this any stipulations required by the Commission would be insufficient in correcting fatal flaws within the application." The Commission then goes on to articulate, in three pages of decision clearly showing great thought, care and hard work on the part of the Commission, its three issues as discussed above.
Because the Court has already concluded that the Commission's receipt of extra record material has removed two of the three bases for the Commission's decision, the Court cannot say with any certainty that the Commission would not have chosen (had it become satisfied with the subdivision application's provisions for down slope flooding and the accuracy of the test pit locations if the applicant had been permitted to present rebuttal evidence to the extra-record evidence considered by the Commission) to impose detailed conditions or stipulations with respect to the septic system design and construction, rather than disapproving the application in its entirety. Further, there is a distinct likelihood that the extra-record evidence has so tainted the fairness of the proceeding that it is inappropriate for the Court to dismiss the appeal because of the sole remaining reason of inadequate septic system design.
A Commission is well within its discretion to elect not to impose conditions or stipulations on its approval, but rather to reject an application which does not conform in the area of septic system design, when the agency has sufficient evidence to so conclude, but on this record the Court is sufficiently concerned with the Commission's use of extra-record material facts and the impact of that use on the procedural fairness of the entire proceeding, that it is of the opinion that the appeal should be sustained.
The Court is aware of its increased authority under Public Act 89-356, in remanding cases back to the commission, but declines to exercise that authority in this case. CT Page 1679
For the foregoing reasons the appeal is sustained.
KOLETSKY, J. CT Page 1680
[EDITORS' NOTE: THIS PAGE IS BLANK.] CT Page 1681
[EDITORS' NOTE: THIS PAGE IS BLANK.] CT Page 1682
[EDITORS' NOTE: THIS PAGE IS BLANK.] CT Page 1683
[EDITORS' NOTE: THIS PAGE IS BLANK.] CT Page 1684
[EDITORS' NOTE: THIS PAGE IS BLANK.] CT Page 1685