[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an appeal from the denial of an application for Cluster Subdivision submitted by Flatbush Building Co., (Appellant) the owner of property located on Sherwood Drive. On January 12, 1990, the appellant submitted an application to the Planning and Zoning Commission of the Town of Stonington (the "Commission"), to subdivide its Sherwood Drive property into three lots. The subdivision was proposed to be a Cluster Subdivision under the subdivision Regulations of the Town of Stonington.
On March 20, 1990, a public hearing was held and thereafter the Commission unanimously voted to deny appellant's application for subdivision of the property. Thereafter, it gave Appellant written notice of its decision stating that "this application as disapproved on this date May 15, 1990, for the following reasons: The Planning and Zoning Commission could not determine that the proposed Cluster Subdivision met the findings of Regulation 10.1 L and 10.1 M."
In order to take advantage of a statutory right to appeal from a decision of an administrative agency, there must be compliance with the statutory provisions which created that right. Simko v. Zoning board of Appeals, 206 Conn. 374, 377, A.2d 202 (1988). These provisions are mandatory and jurisdictional; failure to comply subjects the appeal to dismissal. Id.
In acting on an application for resubdivision approval, the Commission acts pursuant to 8-26 and the Town's Subdivision Regulations. General Statutes 8-26 (Rev. to 1989, as amended by Conn. Pub. Acts No. 89-356, 14 (1989)). The regulation of the subdivision of land is an exercise of the planning power and, therefore, appeals from commission action relating to subdivision is governed by 8-28. Walls v. Planning and Zoning commission,176 Conn. 475, 476 n. 1 (1979). Section 8-28 provides that appeals from decisions of planning commissions may be taken pursuant to 8.8.
Appellant's appeal is brought pursuant to Connecticut General Statute 8-8 which provides that "[a]ny person aggrieved by any decision" of the local authority may appeal therefrom. An owner of the property in issue is aggrieved. See The Bossert Corporation v. Norwalk, 157 Conn. 279, 285 (1968). At the hearing on July 31, 1991, the appellant presented evidence of ownership and was found by the court to be aggrieved.
The actions of a local zoning authority should be reversed when "the local authority has acted illegally or arbitrarily or has abused its discretion." Frito-Lay v. Planning and Zoning Commission, 206 Conn. 554, 573, 538 A.2d 1039 (1988). Judicial review of decisions rendered by local land use authorities is limited to a determination as to whether the authority has acted CT Page 9399 illegally or arbitrarily or has abused its discretion. Raybestos-Manhattan, Inc. v. Planning and Zoning commission, 186 Conn. 466,470, 442 A.2d 65 (1982). Accordingly, the test for review of a planning commission's administrative action is "whether the reasons assigned by the commission for its action find reasonable support in the record before it and whether the reasons are pertinent to the considerations which the commission was required to apply" under the regulations. Torsiello v. Zoning Board of Appeals of the City of Milford, 3 Conn. App. 47, 484 A.2d 483 (1984); Cameo Park Homes, Inc. v. Planning and Zoning Commission, 150 Conn. 672,677, 192 A.2d 886 (1963); Swensson v. Planning Zoning Commission,23 Conn. App. 75, 579 A.2d 113 (1990); Langer v. Planning Zoning Commission of the Town of Westport, 163 Conn. 453, 313 A.2d 44
(1972). "The conclusions of the commission must stand if even one of the stated reasons is reasonably supported by the record." Weatherly v. Town Planning and Zoning Commission, 23 Conn. App. 115,119, 579 A.2d 94 (1990); Crescent Development Corporation v. Planning commission, 148 Conn. 145, 150, 168 A.2d 547 (1961). The burden of proof to demonstrate that the Commission acted improperly rests squarely on the plaintiffs. Cameo Park Homes,150 Conn. at 679.
The trial court must determine whether [a planning] commission has correctly interpreted its regulations and applied them with reasonable discretion to the facts." Baron v. Planning and Zoning commission, 22 Conn. App. 255, 257, 576 A.2d 589 (1990). In so doing, the court cannot substitute its own judgment for that of the local planning authority and must not disturb decisions of the local commission as long as honest judgment has been reasonably and fairly exercised. Id. Zoning commissions, in certain situations, "ha[ve] `no independent discretion beyond determining whether the plan complies with the applicable regulations . . . [and] is under a mandate to apply the requirements of the regulations as written.'" Norwich v. Norwalk Wilbert Vault Co., 208 Conn. 1, 12,544 A.2d 152 (1988) (quoting Allied Plywood, Inc. v. Planning and Zoning Commission, 2 Conn. App. 506, 512, 372 A.2d 133, cert denied, 194 Conn. 808 (1984)).
In such situations, the Planning Commission's function is "to determine whether the application's proposed use is one which satisfied the standards set forth in the regulations and the statutes." Goldberg v. Zoning Commission, 171 Conn. 22, 29,372 A.2d 133 (1977). "`If the plan submitted conforms to these regulations, the council has no discretion or choice but to approve it.'" Allied Plywood, 2 Conn. App. at 512 (quoting RK Development Corp. v. Norwalk, 156 Conn. 369, 375-76, 242 A.2d 781 (1968)). "The planning commission, acting in its administrative capacity herein, has no discretion or choice but to approve a subdivision if it conforms to the regulations adopted for its guidance. Reed v. Planning and Zoning commission, 208 Conn. 431, 433, CT Page 9400544 A.2d 1213 (1988).
Although the applicable subdivision regulations provide a basis for review, a planning commission may also consider town zoning regulations in reviewing a subdivision application. Krawski v. Planning and Zoning Commission, 21 Conn. App. 667, 670-71,575 A.2d 1036 (1990); Connecticut General Statutes 8-26 (1991).
"The grounds for [the planning commission's] action [concerning application for subdivision approval] shall be stated in the records of the commission . . ."; General Statutes 8-26; and ""[W]henever a [planning commission] grants or denies a special permit or special exception, it shall state upon its records the reason for its decision." General Statutes 8-26e.
Case law clearly requires the trial court, in appeals from planning and zoning authorities, to search the record to determine the basis for decisions made by those authorities. Gagnon v. Inland Wetlands and Watercourses Commission, 213 Conn. 604, 607-8,569 A.2d 1094, (1990) citing Parks v. Planning and Zoning Commission,178 Conn. 657, 425 A.2d 100 (1979).
The subdivision regulations for the Town of Stonington contain specific provisions for cluster subdivisions such as the one proposed by the appellant. Those regulations specifically set out standards which the commission must apply and with which the application must comply. Those standards are set out in 10 of the Subdivision Regulations of the Town of Stonington as amended through November 1, 1989. They are as follows:
"CHAPTER X. MODIFICATIONS
10.1 Purpose
In order to assure better design and to avoid difficulties due to topography, other natural features and character of the specific area of Stonington, the minimum lot area in any zone may, but need not, be modified. This is achieved by permitting a reduction of lot size from applicable zone requirements and requiring that the total amount of land reduced be set aside as preservation area.
The Planning and Zoning Commission shall, in determining the arrangement of the lots, the dimensions of each lot, the location of open space and/or reserve areas, find the following:
. . .
 L. The proposed Cluster Design subdivision would be more beneficial to the Town of Stonington than development under district zoning regulations. CT Page 9401
 M. The preservation area resulting from the Cluster Design is of sufficient environmental value to warrant trading permission for Cluster Design in order to acquire such benefit.
. . ."
The Commission determined that appellant's proposed Cluster subdivision did not meet the requirements of 10.1 L and 10.1 M. The Commission stated that "this application was disapproved on this date May 15, 1990 for the following reasons: The Planning and Zoning commission could not determine that the proposed Cluster subdivision met the findings of Regulation 10.1 L and 10.1 M."
The Minutes of the Commission's May 15, 1990 meeting, at which the vote was taken indicate the following:
 PZ90007SD Flatbush Building Co. Application for a 3-lot subdivision.
 "Mrs. Hill made a motion that Application PZ90007SD Flatbush Building Co. for a 3-lot subdivision. Property located at Sherwood Drive, Stonington, CT. Assessor's Map 43 Block 2 Lot 1B. Zone GBR-130, be denied for the reason it does not meet Cluster Development Regulations 10.1 L and 10.1 M (Mrs. Hill read the regulations; and it is no benefit to the town to trade off subdivision.) Mr. Wholman seconded the motion and it was approved by Mrs. Hill, Mr. Wholman, Mr. Perry, Mr. Stamm, and Mr. McKinley."
There is nothing in the record to support the assertion by Mrs. Hill that "it is no benefit to the town to trade off subdivision." On contrary, the record is replete with evidence showing that a Cluster Subdivision is preferred to a conventional plan pursuant to district zoning regulations.
The record shows that pursuant to a conventional design, an additional cul-de-sac would be created near an existing cul-de-sac. The Conservation Commission stated in part: "The `conventional' plan presented on sheet 5 of 6 is not a viable plan since it is a cul-de-sac off an existing cul-de-sac, which is already larger than allowed by current regulations, and which also comes off a loop road." Furthermore, the Highway Department stated that it is "against [a] conventional design because of the maintenance of an unnecessary cul-de-sac."
There is nothing in the record to indicate that development under district zoning regulations is more beneficial than CT Page 9402 development under the Cluster Subdivision Regulations without the second cul-de-sac. Nor is there anything in the record to indicate that a Cluster Subdivision would be less beneficial than development under district zoning regulations.
One part of one record item appears to provide some support for the Commission's denial of the application. Specifically, the conservation Commission stated: ". . . Recommend allowing a 2-lot subdivision to minimize impact on the primary acquifer, and denying the cluster."
The Zoning Regulations of the Town of Stonington Article VII, 7.1-9, addresses aquifer protection. However, neither party refers to the aquifer regulations. Subsection D addresses Use Regulations:
D. Use Regulations
 Direct Recharge Areas of Designated Aquifers Aquifer Protection Zones.
 All uses which are permitted in the existing zones are also permitted in the aquifer protection zones with the following exceptions, restrictions and requirements.
 1. Subsurface Disposal of Domestic Sewerage. Sanitary wastewater discharge to on-site septic systems shall not average more than 350 gallons per acre per day in the direct recharge area.
. . .
The issue of the impact on the primary acquifer is addressed in the transcript of the Town of Stonington Planning and Zoning Commission, dated March 20, 1990. Mr. Cherenzia, a licensed professional engineer and a licensed land surveyor registered in the State of Connecticut, stated, "I know it wasn't brought up, but I'll bring up the fact that we do realize that we are in the primary aquifer recharge zone and along with that we do meet the Regulation that states that we have to be under 350 — we're allowed to have 350 gallons per acre per day. With this configuration, a three-lot cluster, if you take the full 13.36 acres divided by the total gallons, which is 450 gallons designed for each three-bedroom home, which totals 1350 gallons, it will allow us 101 gallons per acre per day for this entire site. If we want to [be] more conservative and deduct out the wetlands, the total acreage now is 12.06 acres. Divide that by the 1350 gallons for the whole site. That divides out to be 112 gallons per acre per day, which is well under the 350. We're like one-third what the CT Page 9403 requirement is for the aquifer protection area."
It is apparent that the only part of the record which addresses the Aquifer Regulations supports the argument that the subdivision meets the Zoning Regulations regarding aquifer protection. The record discloses that the Department of Highways and Bridges stated that the application "meets Highway Department specifications."
In addition, the record demonstrates that the appellant has a permit from the Inland Wetlands Commission and that the Agent for the Health Officer found the proposed septic areas appeared to be suitable for the use of individual sewage disposal systems.
The actions of a local zoning authority should be reversed when "the local authority has acted illegally or arbitrarily or has abused its discretion." Frito-Lay v. Planning and Zoning Commission, 206 Conn. 554, 573, 538 A.2d 1039 (1988).
"The planning commission acting in its administrative capacity has no discretion or choice but to approve a subdivision if it conforms to the regulations adopted for its guidance. Reed v. Planning and Zoning commission, 208 Conn. 431, 433,544 A.2d 1213 (1988).
Clearly then, there is nothing in the record to indicate that the subdivision did not conform to the Stonington Subdivision Regulations. The Court finds that the Commission acted illegally, arbitrarily and in abuse of its discretion in denying appellant's application since the reasons assigned by the Commission for its action do not find reasonable support in the record. The appeal is sustained.
TAMBORRA, J.