[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, Basha Szymanska, appeals from a decision of the defendant, the Planning and Zoning Commission of the Town of Ridgefield (commission), denying her subdivision application. The commission acted pursuant to General Statutes § 8-26. The plaintiff appeals pursuant to General Statutes § 8-8.
 I PROCEDURAL HISTORY
Notice of the commission's denial of the subdivision application was published in the Ridgefield Press on August 3, 2000. (return of Record [ROR], Item WWW.) The plaintiff served the appeal on the chairperson of the commission and the assistant town clerk of the town of Ridgefield on August 8, 2000. (Sheriff's Return. ) The appeal was filed with the clerk of the Superior Court on August 16, 2000. The commission filed its answer on December 4, 2000, and the return of record on December 5, 2000. The plaintiff and the commission filed briefs on February 5, 2001 and March CT Page 13601 7, 2001, respectively. The appeal was heard by the court, White, J., on May 21, 2001. The parties, pursuant to an order of the court, subsequently submitted supplemental briefs on the issue of mootness.
 II FACTS
On January 14, 2000, the plaintiff filed an application to subdivide certain property in the Town of Ridgefield. (ROR, Item F.) The subject property consists of approximately eighty-nine acres, bounded on the north by Fox Hill Lake and High View Road, on the east by Great Hill Road, and on the west by Limestone Road. (ROR, Items F and EEEE.) The application seeks approval of the property as a planned residential development under § 308.0 of the Ridgefield zoning regulations. (ROR, Item F.) That section allows developers dedicating one-third of a subdivision as open space to create building lots smaller than those otherwise permitted by the zoning regulations.[1]
The subject property is located primarily within the RAA zoning district, which ordinarily requires a minimum lot size of two acres. Ridgefield Zoning Regs., § 402.0. A small area at the northern end of the property is within the RA zoning district, which ordinarily requires a minimum lot size of one acre, Ridgefield Zoning Regs., § 403.0. Under the applicant's proposal, approximately thirty and one-half acres would be dedicated as open space. The remainder of the property would be divided into twenty-three lots. The largest of the lots, designated as lot 12, would be located entirely within the RAA (two acre) zoning district, and would be over nineteen acres in size. The other twenty-two lots range from just over one acre to approximately two and one-quarter acres in size.
The public hearing on the plaintiff's application was conducted during three meetings of the commission, held on April 25, 2000, June 13, 2000, and June 20, 2000, respectively. Throughout the public hearing, members of the commission repeatedly expressed concern over possible future uses of lot 12, and sought assurances from the plaintiff that she would not seek a resubdivision of lot 12 in the future. The plaintiff refused to provide information as to future plans for the lot or to agree to a restriction on future use or resubdivision. (ROR, Item X, p. 88; Item KK, pp. 251-53; Item QQ, pp. 318-20, 360-361.) At its July 5, 2000 meeting, the commission designated the subject property as suitable for a planned residential development pursuant to § 308.0(B) of the Ridgefield zoning regulations, but tabled discussion of the subdivision application.[2] (ROR, Item MMM.) CT Page 13602
At its July 25, 2000 meeting, the commission adopted its final resolution denying the plaintiff's subdivision application. (ROR, Item PPP.) The final resolution sets forth the reasons for the denial as follows:
 1. The application violates the intent of Sec. 308.0 ("Planned Residential Development") of the Zoning Regulations, in particular the statement that "The intent of this section is to provide meaningful areas of open space in residential developments by encouraging the clustering of single-family dwellings on lots smaller than those otherwise permitted in the underlying zone." The applicant has retained a 19-acre parcel and, despite repeated questioning, has not defined or limited the intent for future subdivision or other use of the lot.
 2. In Section 308.0C(6), the Commission is permitted by its own regulations to seek "any other data that might help the Commission judge the suitability of the proposed development." The Commission sought any data the applicant would give, either limiting the 19-acre parcel to expressly residential, non-Special Permit uses or otherwise describing or limiting its future use. The applicant would not provide any such data.
 3. Section 308.0F of the zoning regulations ("Review Standards" for Planned Residential Development) states that the Commission "shall find that the development will not adversely affect existing or potential development of neighboring properties." The uncertainty of the 19-acre parcel and the effects of its future development cannot be determined. The size of the lot would allow for application for a number of Special Permit uses, including non-residential as well as residential use, which could adversely affect existing or potential development of neighboring properties.
 4. Section 308.0G of the zoning regulations ("Standards" for Planned Residential Development) states that "the maximum number of dwelling units shall be determined by dividing the net development area by the minimum lot area per family required by the zoning district in which the tract is located," (a standard reaffirmed by the Connecticut Superior Court). Even when subtracting 10% of the land to CT Page 13603 account for roads, the applicant may be entitled to as many as forty lots; the undivided 19-acre lot may yield as many as 17 new lots. Again, the applicant has refused to define or delineate the future of the large lot, which violates the intent of the PRD regulations.
(Emphasis in original.) (ROR, Item PPP, pp. 7-8.) Additional facts are set forth below as necessary for resolution of the plaintiff's claims.
The plaintiff challenges the decision of the commission on the ground that the commission acted illegally, arbitrarily and in abuse of its discretion. According to the plaintiff, the subdivision plan meets the requirements of the zoning and subdivision regulations and the reasons given for the denial were improper in that they were based on factors not contained in the regulations.
 III AGGRIEVEMENT
"[P]leading and proof of aggrievement are prerequisites to the trial court's jurisdiction over the subject matter of a plaintiff's appeal [under General Statutes § 8-8]." Jolly, Inc. v. Zoning Board ofAppeals, 237 Conn. 184, 192, 676 A.2d 831 (1996). "The jurisdictional requirement of aggrievement serves both practical and functional purposes in assuring that only those parties with genuine and legitimate interests are afforded an opportunity to appeal. . . . Aggrievement falls within two broad categories, classical and statutory. . . . A party has been classically aggrieved if it successfully demonstrates a specific, personal and legal interest in the subject matter of the decision, as distinguished from a general interest, such as the concern of all members of the community as a whole, and successfully establishes that this specific, personal and legal interest has been specially and injuriously affected by the decision." (Citation omitted.) Zoning Board of Appealsv. Planning Zoning Commission, 27 Conn. App. 297, 300-301, 605 A.2d 885
(1992).
"Statutory aggrievement exists by legislative fiat, which grants appellants standing by virtue of a particular legislation, rather than by judicial analysis of the particular facts of the case." Id., 301. In an appeal from a municipal planning commission pursuant to General Statutes § 8-8, "`aggrieved person' includes any person owning land that abuts or is within a radius of one hundred feet of any portion of the land involved in the decision of the board." General Statutes § 8-8 (a) (1). CT Page 13604
The plaintiff has alleged that, as the owner of the subject property, she is both classically and statutorily aggrieved by the commission's denial of the subdivision application. (Appeal, ¶ 16.) During the hearing before this court, the plaintiff testified as to her ownership, and submitted a deed demonstrating that she is the owner of the subject property. (Plaintiff's Exhibit 1.) As the owner of the property subject to the commission's decision, the plaintiff is aggrieved. See Quarry KnollII Corp. v. Planning Zoning Commission, 256 Conn. 674, 704, (2001).
 IV TIMELINESS OF THE APPEAL AND SERVICE
An appeal from a decision of a municipal planning commission must be commenced within fifteen days of the date that notice of the commission's decision is published. General Statutes § 8-8 (b). The notice of decision in the present case was published in the Ridgefield Press on August 3, 2000, and the sheriff's return indicates that service was made on the commission on August 8, 2000. The commission was, therefore, properly served within the time limitation of § 8-8 (b).
 V MOOTNESS
The commission claims that the plaintiff's appeal is moot and must be dismissed by the court for lack of subject matter jurisdiction. The commission's claim is based on the following undisputed facts as set forth in the parties' supplemental briefs. Following the commission's denial of the plaintiff's first subdivision application, which resulted in the present appeal, the plaintiff filed a second application to subdivide the same property, minus the nineteen acre lot. The commission approved the second application. The approval of the second application has been appealed to this court by neighboring landowners in the case ofDeLalla v. Planning Zoning Commission, CV-01-0342345-S. According to the commission, its approval of the second subdivision application renders moot this appeal from the denial of the first application.
"Since mootness implicates the subject matter jurisdiction of this court, we must first consider the defendants' threshold claim that subsequent events have so overtaken this litigation that the appeal has become moot. . . . The issue of subject matter jurisdiction can be raised at any time. . . . Once brought to the attention of the court, regardless of the form of the motion, it must be acted upon." (Citation omitted; CT Page 13605 internal quotation marks omitted.) Gagnon v. Planning Commission,222 Conn. 294, 297, 608 A.2d 1181 (1992).
"We have consistently held that we do not render advisory opinions. If there is no longer an actual controversy in which we can afford practical relief to the parties, we must dismiss the appeal. . . . Because courts are established to resolve actual controversies, before a claimed controversy is entitled to a resolution on the merits it must be justiciable. Justiciability requires . . . that there be an actual controversy between or among the parties to the dispute: Courts exist for determination of actual and existing controversies, and under the law of this state the courts may not be used as a vehicle to obtain judicial opinions on points of law. . . . [W]here the question presented is purely academic, we must refuse to entertain the appeal . . . A case becomes moot when due to intervening circumstances a controversy between the parties no longer exists." (Citations omitted; internal quotation marks omitted.) Domestic Violence Services of Greater New Haven, Inc. v. FOIC,240 Conn. 1, 6-7, 688 A.2d 314 (1997).
In arguing that the present action should be dismissed for mootness, the defendant relies on the case of Gagnon v. Planning Commission,
supra, 222 Conn. 294. In that case, the plaintiff, an abutting landowner, appealed from a planning commission's approval of the defendants' subdivision application. During the pendency of the appeal, the defendants filed a second application to subdivide the same property. No appeal was taken from the approval of the second application. After the expiration of the appeal period, the defendants recorded the second subdivision map on the land records. The defendants moved to dismiss the appeal from the first application on the ground that the subsequent approval and recording of the second subdivision application had rendered the first application moot. Our Supreme Court agreed, stating: "Having obtained approval from the planning commission for the resubdivision of the identical property and having thereafter recorded the resubdivision map upon the land records, the defendants waived irrevocably whatever benefit they may have derived from the planning commission' s earlier approval of the first subdivision. The defendants having withdrawn their claim to its benefits and having effectively extinguished the original subdivision plan through recording of the resubdivided version, the subdivision's potential burdens to the plaintiff no longer presented a justiciable issue." Id., 298-99.
In the present case, the approval of the plaintiff's second subdivision application has been appealed, and the appeal is still pending before the Superior Court. Consequently, the commission's approval of the second subdivision application may still be reversed on appeal. The Gagnon
court's holding was based on the principle that the recording on the land CT Page 13606 records of a subdivision plan that has received final approval and has not been appealed acts as an implied withdrawal of any previous subdivision applications on the same property. The Supreme Court's opinion does not suggest that the mere filing of a subsequent subdivision application functions as a withdrawal of an earlier application on the same property. Nor does it suggest that the approval of the subsequent application has such an effect while an appeal of the approval is still pending. This court, therefore, concludes that the present case is distinguishable from Gagnon and that approval of the plaintiff's subsequent subdivision application has not rendered this matter moot.
 VI STANDARD OF REVIEW
"The limited scope of review in subdivision appeals is well established. It is axiomatic that a planning commission, in passing on a [subdivision] application, acts in an administrative capacity and is limited to determining whether the plan complies with the applicable regulations. . . . The commission is entrusted with the function of interpreting and applying its zoning regulations. . . . The trial court must determine whether the commission has correctly interpreted its regulations and applied them with reasonable discretion to the facts. . . . The trial court can sustain the [plaintiff si appeal only upon a determination that the decision of the commission was unreasonable, arbitrary or illegal. . . . It must not substitute its judgment for that of the zoning commission and must not disturb decisions of local commissions as long as honest judgment has been reasonably and fairly exercised." (Citations omitted; internal quotation marks omitted.) GormanConstruction Co. v. Planning Zoning Commission, 35 Conn. App. 191,195-96, 644 A.2d 964 (1994).
 VII DISCUSSION
The plaintiff argues that her subdivision application conforms to the requirements of the Ridgefield zoning and subdivision regulations, and that the commission, therefore, exceeded its authority when it denied her application. The plaintiff contends that the commission rejected her application because of her refusal to consent to a restriction on future resubdivision of lot 12, and that the commission lacks the authority to require such a restriction. The commission maintains, however, that its denial of the plaintiff's application was authorized by the provisions of § 308.0 of the Ridgefield zoning regulations. For the reasons set forth below, the court agrees with the plaintiff. CT Page 13607
"[A] municipal planning commission, in exercising its function of approving or disapproving any particular subdivision plan, is acting in an administrative capacity and does not function as a legislative, judicial or quasi-judicial agency. . . . The planning commission, acting in its administrative capacity . . ., has no discretion or choice but to approve a subdivision if it conforms to the regulations adopted for its guidance. . . . If it does not conform as required, the plan may be disapproved." (Citations omitted; internal quotation marks omitted.) Reedv. Planning Zoning Commission, 208 Conn. 431, 433, 544 A.2d 1213
(1988). A planning commission exceeds its authority when it denies a subdivision application on the basis of an issue not addressed by the applicable regulations and statutes. Id., 435-36.
As discussed above, various members of the commission inquired during the public hearing as to whether the plaintiff would be willing to place a restriction on future subdivision or use of lot 12. Specifically, at the April 25, 2000 meeting, the following exchange took place between Commissioner David Huntoon and Rex Gustafson, the attorney representing the plaintiff at the hearing:
 Mr. Huntoon: [I]s there any assurance that we can get, that that will not be a resubdivision application and be made to whack that up into smaller lots at some later date? Now, we can't, Rex, we can't put those kind of condition on it, as you know.
 Arty. Gustafson: Case law prohibits the Commission from . . .
 Mr. Huntoon: I understand about that, but that's why I'm asking you . . .
Atty. Gustafson: No, we're not going to offer that, Dave.
 Mr. Huntoon: I want this on the record, so I'm going to ask you in my own words. Is the applicant willing to make an undertaking that that 19-acre will not be subdivided ever.
Atty. Gustafson: No.
 Mr. Huntoon: Thank you. CT Page 13608
(Emphasis in original.) (ROR, Item X, p. 88.) At the June 13, 2000 meeting Commissioner John Katz inquired as to future plans for possible subdivision of lot 12. The following exchange took place:
 Atty. Gustafson: Well, I guess the answer to that, John, is right now, there are no plans whatsoever.
 Mr. Katz: But it . . . this is a question because it's a public hearing. Does it not occur to Counsel for the applicant, if not the applicant and/or herself, that for the Commission to be confronted with a proposed 26-lot planned residential subdivision, that technically could be vastly enlarged by the resubdivision of a 19-acre parcel within a PRD configuration, which is what the overview is, really asks us to look [at] an emperor with no clothing. And I'd like you to put some clothing on the emperor.
 Atty. Gustafson: Well, as I said John, right now we have absolutely no plans, but I mean if you want us to come back, I mean are you asking us to come back with a subdivision to subdivide that as well?
 Mr. Katz: I'm asking for a restriction, an ability for us to achieve some closure on this thing so we know what the hell we're putting our hands around here. Basically, there are 16 additional lots in that parcel, maybe more.
(ROR, Item KK, pp. 253-54.) Finally, during the June 20, 2000 meeting, the subject was discussed again by Katz, Gustafson and Commissioner Nelson Gelfman:
 Mr. Katz: I would like to see a deed restriction on these 3 . . . these 19 CT Page 13609 some-odd acres that would never in perpetuity exceed an additional 2 lots.
Atty. Gustafson: We will not agree.
* * *
 Mr. Katz: The regulations are, and you know better than I, are an amorphous set of documents that are subject to change over a variety of events, time, different Commissions, different needs in a Town like Ridgefield, and that's a place that, and also a building (inaudible) of significant size, so that if regulations change there could be some multifamily housing there, low-cost housing there, some old-age nursing housing could be there. Things change, and I think that this applicant, has presented a responsible subdivision (inaudible), but he's very damned greedy. All I want is a deed restriction based on the regulations when he applied for his subdivision, and it seems untoward to me for you and your client not to be able to (inaudible).
* * *
 Dr. Gelfman: You're saying that you will not restrict it to what can be obtained with a conventional subdivision, which is the current regulation for PRD.
Arty. Gustafson: We will not agree to that, no.
(ROR, Item QQ, pp. 319-22.)
"[A] blanket prohibition on future subdivisions, without reference to a relevant provision in either the local subdivision regulations or the CT Page 13610 enabling statutes, is an impermissible expansion of the powers wielded by a planning commission." Moscowitz v. Planning Zoning Commission,16 Conn. App. 303, 311, 547 A.2d 569 (1988). "The planning commission, acting in its administrative capacity . . . has no discretion or choice but to approve a subdivision if it conforms to the regulations adopted for its guidance." Reed v. Planning Zoning Commission, supra,208 Conn. 433. A planning commission may not circumvent this administrative duty by empowering itself to deny future applications that are in full compliance with the regulations. Moscowitz v. Planning Zoning Commission, supra, 16 Conn. App. 312. A landowner's "power to limit the future use of [property is] not a power [the landowner can] transfer to the planning commission. Nor is it a power that the planning commission has authority to possess." Id., 311 n. 8.
Under our appellate case law, therefore, it is clear that the commission lacks the power to restrict the plaintiff's future subdivision or use of her property. Consequently, to the extent that the commission's stated reasons for denying the plaintiff's application are related to the plaintiff's refusal to limit in advance her future subdivision or use of her property, the reasons are invalid. The court must, therefore, carefully evaluate the plaintiff's assertion that the denial of her application was based only on the failure of the [plaintiff] or her attorney to commit to imposing a restrictive covenant preventing further resubdivision of the nineteen acre parcel." In addition, the plaintiff argues that the reasons given by the commission have no basis in the relevant statutes and regulations. The court will examine each of the commission's four reasons to determine whether it constitutes an adequate basis for upholding the commission's action.
The commission's first reason for denying the plaintiff's application states: "The application violates the intent of Sec. 308.0 (`Planned Residential Development') of the Zoning Regulations, in particular the statement that "The intent of this section is to provide meaningful areas of open space in residential developments by encouraging the clustering of single-family dwellings on lots smaller than those otherwise permittedin the underlying zone.' The applicant has retained a 19-acre parcel and, despite repeated questioning, has not defined or limited the intent for future subdivision or other use of the lot." (Emphasis in original.) (ROR, Item PPP, pp. 7.) The commission's argument appears to be that because § 308.0(A) permits and encourages lots smaller than otherwise permitted in the underlying zone, the regulation must be read to require all lots to be smaller than otherwise permitted.
"A municipal ordinance is subject to the same canons of [statutory] construction as are applied to state statutes." (Internal quotation marks omitted.) Kaeser v. Zoning Board of Appeals, 218 Conn. 438, 443, CT Page 13611589 A.2d 1229 (1991). "It is the duty of the court to interpret statutes as they are written . . . and not by construction read into statutes provisions which are not clearly stated." (Citation omitted; internal quotation marks omitted.) Luce v. United Technologies Corp., 247 Conn. 126,133, 717 A.2d 747 (1998). Although the commission urges the court to read the Ridgefield zoning regulations so as to prohibit in a planned residential development any lot larger than the ordinary minimum lot size for the underlying zone, the regulations simply do not contain such a provision. The court will not read into the regulations a maximum lot size requirement for planned residential developments. Because the regulations do not include a maximum lot size, the fact that one lot in the plaintiff's application has an area of nineteen acres does not provide an adequate basis for the denial of the application.
The remainder of the commission's first stated reason is that the plaintiff "has not defined or limited the intent for future subdivision or other use" of lot 12. As discussed above, a planning commission evaluating a subdivision application does not have the power to prohibit or limit in advance the future use or subdivision of the property. The commission's first reason is, therefore, invalid.
The commission's second reason for denying the plaintiff's application states: "In Section 308.0C(6), the Commission is permitted by its own regulations to seek any other data that might help the Commission judge the suitability of the proposed development.' The Commission sought any data the applicant would give, either limiting the 19-acre parcel to expressly residential, non-Special Permit uses or otherwise describing or limiting its future use. The applicant would not provide any such data," (ROR, Item PPP, p. 7.) Although the commission correctly quotes § 308.0(C)(6), the court cannot read the regulation to require the plaintiff to submit to restrictions on the future use of her property. As stated above, our Appellate Court has specifically stated that a planning commission considering a subdivision application does not have the power to limit the future use of property. The commission cannot, simply by using the word "data," circumvent the clear holding of our Appellate Court prohibiting such a limitation. The commission's second reason is, therefore, invalid.
The commission's third reason for denying the plaintiff's application states: "Section 308.0F of the zoning regulations (`Review Standards' for Planned Residential Development) states that the Commission "shall find that the development will not adversely affect existing or potential development of neighboring properties.' The uncertainty of the 19-acre parcel and the effects of its future development cannot be determined. The size of the lot would allow for application for a number of Special Permit uses, including non-residential as well as residential use, which CT Page 13612 could adversely affect existing or potential development of neighboring properties." (ROR, Item PPP, p. 7.) Again, the commission is attempting, through creative reading of its regulations, to do what it is not permitted to do under our case law. The "uncertainty of the 19-acre parcel" is a clear reference to the plaintiff's refusal to restrict future use of her property. Furthermore, the commission has failed to cite, and the court is unable to find, any authority for the proposition that a subdivision application may be denied because of the hypothetical possibility that the landowner will in the future apply for a special use permit. Finally, the record in the present case is devoid of evidence from which the commission could have concluded that "existing or potential development" will be adversely affected by the plaintiff's subdivision.
The commission's fourth reason for denying the plaintiff's application states: "Section 308.0G of the zoning regulations (`Standards' for Planned Residential Development) states that "the maximum number of dwelling units shall be determined by dividing the net development area by the minimum lot area per family required by the zoning district in which the tract is located,' (a standard reaffirmed by the Connecticut Superior Court). Even when subtracting 10% of the land to account for roads, the applicant may be entitled to as many as forty lots; the undivided 19-acre lot may yield as many as 17 new lots. Again, the applicant has refused to define or delineate the future of the large lot, which violates the intent of the PRD regulations." (ROR, Item PPP, pp. 7-8.) In support of this reason, the commission argues that "[u]nder the PRD subdivision plan submitted by the plaintiff, it was impossible to determine the number of building lots proposed, because of the potential of subdividing the 19 acre parcel."
There is no merit to the commission's argument for a number of reasons. First, the commission's assertion that the number of building lots proposed is unascertainable has no support in the record. There is no dispute that the plaintiff's present application seeks to subdivide the property into twenty-three lots. Second, the fact that the plaintiff may in the future seek to further subdivide the nineteen acre lot is irrelevant. Should the plaintiff file such an application in the future, the commission will evaluate that application on its own merits at that time. As with the commission's third reason discussed above, the commission's hypothetical speculation regarding future applications by the plaintiff does not provide an adequate ground for denial of the present application. Third, the plaintiff's application conforms to the requirements of § 308.0(G) quoted by the commission. Because § 308.0(G) sets forth the formula for calculating the maximum number of dwelling units, the fact that the plaintiff may have proposed fewer dwelling units is of no consequence. The commission's fourth reason for denying the plaintiff's application is invalid. CT Page 13613
 VIII CONCLUSION
A planning commission reviewing a subdivision application does not possess the power to limit in advance the future use or subdivision of property. Consequently, to the extent that the four reasons given by the commission for denial of the plaintiff's application in the present case relate to the plaintiff's refusal to restrict the future use or subdivision of her property, the reasons are invalid. Furthermore, the regulations cited by the commission do not provide a basis for denying the plaintiff's application.
For the reasons stated above, the plaintiff's appeal is sustained and the commission is ordered to approve the plaintiff's subdivision application.
White, J.